GEORGE A. BULL, APPELLEE, V. RUDOLPH MITCHELL ET AL., APPELLANTS.

FILED MARCH 18, 1896.   No. 6393.

1. **Mortgages:** NEGOTIABLE INSTRUMENTS: PAYMENT.  Where a mortgage was made to secure payment of a negotiable promissory note, the parties making such note and mortgage are not necessarily entitled ot protection as to payments to the mortgagee, made solely on the assumption that the original payee of the note still remained the holder thereof.  Following *Eggert v. Beyer,* 43 Neb., 711, and *Stark v. Olsen,* 44 Neb., 646.

2. ————: ————: ————: PRINCIPAL AND AGENT.  Where payment of a negotiable note secured by mortgage was made to an investment company of which the mortgagee was manager and such payment was never forwarded to the party to whom such note had been transferred, *held,* that the mere fact that antecedent payments made in like manner had been made to be forwarded to the transferee of such note and had been so forwarded, did not bind the holder of the note as to the final payment not forwarded,

it being shown by the evidence that such holder had
never in any way held out or recognized the mortgagee
as his agent.

APPEAL from the district court of Colfax
county. Heard below before MARSHALL, J.

The facts are stated by the commissioner.

*Grimison & Thomas*, for appellants:

The final payment was, in contemplation of
law, made to the plaintiff. (*Columbia Mill Co. v.
National Bank of Commerce*, 53 N. W. Rep. [Minn.],
1062; Herman, Estoppel, secs. 1079, 1080; *Swartz
v. Leist*, 13 O. St., 424; *Smith v. Kidd*, 68 N. Y.,
130; *Brewster v. Carnes*, 9 N. E. Rep. [N. Y.], 323.)

Payment to the mortgagee should be held to
constitute a discharge and release of the mort-
gage. (*Johnson v. Carpenter*, 7 Minn., 176; *Horts-
man v. Gerker*, 49 Pa. St., 282; *Olds v. Cummings*,
31 Ill., 192; *Walker v. Dement*, 42 Ill., 273; *Bailcy
v. Smith*, 14 O. St., 396; *Bryant v. Vix*, 83 Ill., 11.)

The record disclosed a mortgage payable to
Toncray. Under the record and as to Mitchell,
Toncray could discharge the mortgage. (*Fisher v.
Cowles*, 21 Pac. Rep. [Kan.], 228; *Lewis v. Kirk*, 28
Kan., 497; *Connecticut Mutual Life Ins. Co. v. Tal-
bot*, 113 Ind., 373; *Swartz v. Leist*, 13 O. St., 419.)

*Phelps & Sabin* and *C. C. Flansburg*, contra.

References to question of agency: *Henn v. Con-
isby*, 1 Ch. Cas. [Eng.], 93; *Curtis v. Drought*, 1
Mol. [Irich Ch.], 487; *Whitlock v. Waltham*, 1 Salk.
[Eng.], 157; *Williams v. Walker*, 2 Sandf. Ch. [N.
Y.], 325; *Smith v. Kidd*, 68 N. Y., 130; *James v.
Wilder*, 25 Minn., 312; *Lozier v. Horan*, 55 Ia., 75;
*Armistead v. Armistead*, 10 Leigh [Va.], 525; *Fitler*

*v. Beckley,* 2 Watts & S. [Pa.], 458; *Osborne v. Baird,* 45 Wis., 189; *Wallace v. McConnell,* 13 Pet. [U. S.], 136; *Balme v. Wambaugh,* 16 Minn., 116; *Hills v. Place,* 48 N. Y., 520; *Caldwell v. Cassidy,* 8 Cow. [N. Y.], 271; *Williamsport Gas Co. v. Pinkerton,* 95 Pa. St., 62; *Caldwell v. Evans,* 5 Bush [Ky.], 380; *Ward v. Smith,* 7 Wall. [U. S.], 447; *Freeman v. Curran,* 1 Minn., 169.

References in reply to the contention that payment to the mortgagee should be held to constitute a discharge and release of the mortgage: *Webb v. Hoselton,* 4 Neb., 308; *Kuhns v. Bankes,* 15 Neb., 92; *Mundy v. Whittemore,* 15 Neb., 647; *Cheney v. Janssen,* 20 Neb., 128; *Studebaker Mfg. Co. v. McCargur,* 20 Neb., 500; *Todd v. Cremer,* 36 Neb., 430; *Carpenter v. Longan,* 16 Wall. [U. S.], 271; *Wilson v. Troup,* 2 Cow. [N. Y.], 197; *Sargeant v. Howe,* 21 Ill., 148; *Vansant v. Allmon,* 23 Ill., 30; *Bridges v. Bidwell,* 20 Neb., 185; *Lee v. Clark,* 89 Mo., 553; *Treadwell v. Brooks,* 50 Conn., 262; *Scott v. Field,* 75 Ala., 419; *Burnhans v. Hutcheson,* 25 Kan., 625; *Williams v. Keyes,* 51 N. W. Rep. [Mich.], 522; *Dutton v. Ives,* 5 Mich., 515; *Reeves v. Hayes,* 95 Ind., 521.

RYAN, C.

There was a decree in favor of George A. Bull in the district court of Colfax county whereby was foreclosed a mortgage securing payment of a promissory note for the sum of $1,000. Both the note and the mortgage bore date December 31, 1885; the maturity of the note was January 1, 1891. The makers were Anna Schuldt and John Schuldt, and the note, negotiable by its terms, was payable to the order of C. H. Toncray, and Toncray was likewise the mortgagee. Before this

loan matured the mortgaged premises were con-
veyed to Rudolph Mitchell, who, with his wife,
was therefore made a defendant. The interest
was evidenced by ten coupons, each of which was
for the sum of $37.50. On the original note and
each coupon was indorsed these words:

"Pay to order of ——, without recourse.

"C. H. TONCRAY."

The Nebraska Mortgage & Investment Company
was organized at Fremont in the early part of the
year 1888. Of this company, C. H. Toncray was
the vice president and manager until January 14,
1891, and its office was in the building in which
the Farmers & Merchants National Bank trans-
acted its business. Of this bank, C. H. Toncray
was cashier until January 1, 1889, and G. W.
Dorsey was its president until October, 1891.
Previous to the organization of the Nebraska
Mortgage & Investment Company, Mr. Dorsey
and Mr. Toncray were making farm loans in Ne-
braska and selling in the eastern states the notes
in this manner obtained. When Mr. Toncray had
received the note which gave rise to this suit, with
its coupons and mortgage, he sent them to Alfred
Walker to be sold. Alfred Walker at this time
was engaged in selling farm loans. Afterward,
in October, 1888, he caused to be organized to
carry on the same business the partnership firm
of Alfred Walker & Co., which on February 1,
1890, was succeeded by a corporation under the
name of "The Alfred Walker Company." While
there were the changes indicated, the line of busi-
ness remained the same, and it was transacted at
New Haven, Connecticut. There seems to have
been no special arrangement between the broker-
age concerns of which Alfred Walker constituted

the whole or only a part, on the one hand, and the party or parties who sent notes for sale on the other, further than that sales of the same nature as that above indicated were made. In respect to the subsequent transactions in relation to the note and its security under consideration further statements will be given hereafter.

The confidential clerk, who testified as to the transactions of the above mentioned brokerage with reference to the particular loan with which we are now concerned, said that this note, coupons, and accompanying security were sent to Alfred Walker by the Farmers & Merchants National Bank of Fremont, Nebraska, to be sold in Connecticut, and on this point there was no other direct evidence. It is very difficult to ascertain the facts with relation to the Nebraska part of the history of this entire transaction. It seems, however, that Anna Schuldt and John Schuldt lived in Colfax county, and that it was customary with them to send to C. H. Toncray, at Fremont, in Dodge county, the amount of each coupon as it matured. This was done by sending by some person or perhaps by the use of a draft of a bank near them. Within about a month after each amount had been sent their coupon would be returned to them from Fremont, marked "paid." This notation of payment was always made at Fremont. After Mr. Mitchell became the owner of the mortgaged property, he, on December 30, 1890, purchased from Mr. Folda, a banker, a draft for $1,000 drawn on the First National Bank of Omaha in favor of the Nebraska Mortgage & Investment Company. This draft, in compliance with the request of Mr. Mitchell, was sent for Mr. Mitchell by Folda to Mr. Toncray at Fremont to

take up the note of Anna and John Schuldt which matured January 1, 1891. From the testimony of Charles Collins we learn that in December, 1891, he was appointed receiver of the Nebraska Mortgage & Investment Company. With the testimony of this witness there was submitted a page of the loan register used by the Farmers & Merchants National Bank of Fremont and a page of the ledger of the Nebraska Mortgage & Investment Company. Upon the bank's loan register with respect to the loan made by C. H. Toncray to Anna and John Schuldt appears the following entry: "Paid in full Jany. 5—91. Pd. by R. Folda for Rudolph Mitchell, Schuyler, Nebr." On the page of the ledger of the Nebraska Mortgage & Investment Company there appears the following entries:

1891.    Alfred Walker & Company, Cash.    Cr.
Jany. 5th.    A. Schuldt..............$1,000.00
1890.
Dec. 30.    Anna Schuldt..............    37.50

It is unfortunate that Mr. Toncray did not give his testimony to assist in unraveling this affair, but, as he did not, we must now consider who must suffer for his misconduct in the light of such evidence as is available for that purpose. It is very clear that Mrs. Schuldt and Mr. Mitchell assumed that they could safely make payments to Mr. Toncray, and acted accordingly. The note upon which these payments were made was negotiable, and therefore it was not sufficient to entitle to protection for them to pay to the original mortgagee as such. (*Eggert v. Beyer*, 43 Neb., 711; *Stark v. Olsen*, 44 Neb., 646.) Another principle which operates to the disadvantage of these parties in respect to the payments made by them is

thus stated in *First Nat. Bank of Omaha v. Chilson*, 45 Neb., 257: "One paying money to another, to be applied on a note which such person has not in his possession, assumes the burden to show the authority of the person to whom payment is made to receive the money. (*South Branch Lumber Company v. Littlejohn*, 31 Neb., 606.)" Even if there had been introduced no other evidence, it is extremely doubtful whether that submitted by appellants to show payment was sufficient for that purpose. The payments of interest in each instance were sent to Toncray. He for several years was acting as cashier of a bank and was manager of a mortgage and investment company. During this time there is no evidence that individually he was transacting any business. About a month after each payment of a coupon was made it was returned to the makers bearing an indorsement showing that Mr. Toncray had probably parted with all interest in it. It does not appear that there was ever any inquiry excited by this fact, neither are we informed that between Toncray and the mortgagors there was ever any inquiry made or instructions given upon any subject. The reliance of the mortgagors evidently was upon the fact that in the first instance they had borrowed of Mr. Toncray and had executed to him their note and mortgage. Even if this showing standing alone was sufficient to raise a presumption of payment to a purchaser of the note, this doubt would be dispelled by the rebutting evidence furnished by Mr. Walker and Mr. Bull, by which it was made clear that Mr. Bull purchased the note from Mr. Walker, who was acting not as a general agent for Mr. Toncray, but as a broker generally for the sale of such evi-

dences of indebtedness, and that thereafter Mr.
Bull only presented the coupons to Mr. Walker for
payment as they matured and never constituted
Mr. Walker his agent for any purpose, except on
one occasion to have the note registered by state
authority to exempt it from taxation.   Such in-
terest as was paid was remitted from Nebraska to
Mr. Walker, or one of the companies which suc-
ceeded him, by whom it was paid to Mr. Bull, and
the coupon in each instance paid was, without
being canceled, sent to Fremont.   Both Mr. Bull
and Mr. Walker testified that Mr. Walker was
never employed to act for Mr. Bull, and from Mr.
Walker's evidence it is clear that he received no
compensation for receiving or remitting payment
of the coupons.   His services in this regard seem
to have been donated in consideration of the com-
mission which he had originally received from the
seller of the note for making the sale.   We cannot
see how Mr. Bull could do less than he did to en-
courage the mortgagors in making their payments
as they were made, and most certainly the exer-
cise of such care as knowledge that the note was
negotiable and the means of knowing it had prob-
ably been negotiated would have called for was
wanting on the part of the mortgagors.   Where
one of two innocent persons must suffer through
the misfeasance of the agent of one, that one must
suffer who has placed the agent in a position to
perpetrate the fraud complained of.   (*City Nat.
Bank of Hastings v. Thomas*, 46 Neb., 867; *Scroggin
v. Johnston*, 45 Neb., 714.)   Mr. Mitchell predicates
his right to protection in paying the principal sum
upon the course of dealing to which the mortgag-
ors had been parties.   The failure of this to pro-
tect these mortgagors in like degree operated

against Mr. Mitchell, even if he was in a position to avail himself of it,—a question rendered somewhat doubtful by the fact that he caused the final remittance to be made to the Nebraska Mortgage & Investment Company, and not to C. H. Toncray, as had his predecessors in liability. The judgment of the district court is

AFFIRMED.