WATSON GIBBONS ET AL. V. S. H. KYNER ET AL.

FILED FEBRUARY 2, 1898. No. 8312.

New Trial: EVIDENCE. The evidence on which a petition for a new
trial was granted examined and *held* insufficient.

ERROR from the district court of Brown county.
Tried below before BARTOW, J. *Reversed.*

*C. C. Flansburg*, for plaintiffs in error.

*J. S. Davisson* and *W. J. Courtright, contra.*

RYAN, C.

In the district court of Brown county, J. Abbott
Thompson filed his petition for the foreclosure of a cer-
tain mortgage and note securing payment of the same,
both of which were executed to him by Harvey McMunn
on May 20, 1885. The loan thus evidenced and secured
was for the term of five years. The mortgaged premises
were purchased on November 3, 1885, by Kyner. The
principal defense pleaded by Kyner was the payment of
said note in the year 1890. On the issues joined there
was decreed a foreclosure as prayed. There were two
other cases tried in the same court, to-wit, Gibbons
against Kyner, No. 7717, and Avery against Kyner, No.
7716, on the same issues and with the same result reached
in the case of Thompson against Kyner, and by appeal
all three are now pending in this court. (See *ante*, p. 625.)
In effect the parties have stipulated that the same judg-
ment shall be rendered in this court in each of these
cases; hence, Gibbons against Kyner and Avery against
Kyner need receive no further notice in this case than is
necessary to carry into effect this stipulation.

Mr. Kyner's testimony was to the effect that when the
interest became due he paid it to the Farmers & Mer-
chants National Bank at Fremont until the Nebraska
Mortgage & Investment Company notified him, after

which time he paid the interest to the company last named. The notices sent by the Farmers & Merchants Bank were signed by C. H. Toncray, cashier, and recited that the interest was due and payable at that bank. As a matter of fact the note given by McMunn, as well as each of the coupons, recited that it was payable at the First National Bank of Hartford, Conn. In such notices as were sent by the Nebraska Mortgage & Investment Company there was no statement with reference to the place at which either principal or interest was required to be paid. In his testimony Mr. Kyner identified a postal card sent to him by the said investment company whereby was acknowledged the receipt of $44 in which was included the amount of interest paid on this loan at or about that time, which was November 27, 1889. In this communication Mr. Kyner was informed that the coupons paid by the $44, above mentioned, would later be sent to him, and they were, ordinarily, within from eight to thirty days after payment. The principal sum was paid to the Nebraska Mortgage & Investment Company soon after it fell due and was never remitted to Mr. Thompson. The testimony of Mr. Thompson and C. H. Smith was taken by deposition and offered by Mr. Kyner. In his deposition Mr. Thompson stated that an application for a loan was submitted to him by Tiffany & Smith, that on this application he advanced the money to be loaned Mr. McMunn, and in due time received back the note and mortgage sued on. He further testified that after the receipt of the principal note and coupons in connection therewith he retained the same in his possession in his safe, and if the money was sent to Tiffany & Smith or their successor, C. H. Smith & Co., he would bring the coupon down, and that he knew nothing of a claim of payment of the principal until about the month of March, 1893. He furthermore testified that he did not object to receiving payment of coupons through Tiffany and C. H. Smith & Co., and did not know whether they had a western agency or not, and he thought that most

of the coupons were paid to him through the First National Bank of Hartford, Connecticut, though of this he was not certain. On his cross-examination Mr. Thompson testified that he never gave C. H. Smith & Co., C. H. Smith, senior, or C. H. Smith, junior, any authority concerning the collection of moneys on account of the McMunn loan, and never authorized any person to represent him in Nebraska in connection with this loan. The testimony of C. H. Smith was consistent with that of Mr. Thompson. He explained that for fifteen years preceding January 1, 1887, he had been engaged in business under the name of E. D. Tiffany, and since that date as a member of the firm of C. H. Smith & Co. He testified that this business was dealing in investment securities, including western loans; that he had never known Mr. Toncray personally until October, 1890, and had no business relations with him except receiving drafts for payments of interest on loans negotiated by the Farmers & Merchants National Bank. He further testified that the firms of which he was a member never made any western farm loans, but sold applications made by correspondents for which the firm of which he was a member received a commission. In such cases when the papers were completed and delivered there was no obligation to render further services for any one, though, if applied to by customers the firms of which he was a member would attend to making collections of interest. When such collections were made at Fremont, Nebraska, they were received by C. H. Smith & Co. and E. D. Tiffany through the Farmers & Mechants National Bank of that place, until the date of the organization of the Nebraska Mortgage & Investment Company, after which time they were received through the last named company. At the request of customers the firm of C. H. Smith & Co. would write to correspondents with reference to the probability of payments of principal or interest already in default, but Mr. Smith testified that he did not think these customers knew anything about these correspondents.

There was a large number of letters introduced in evidence in the deposition of Mr. Smith. These were written by the firm of which he was a member to its correspondent in Fremont, but they were entirely consistent with the testimony above quoted. We are clearly of the opinion that the judgment of the district court was in harmony with the views of this court expressed in the following cases: *First Nat. Bank of Omaha v. Chilson*, 45 Neb. 257; *South Branch Lumber Co. v. Littlejohn*, 31 Neb. 606; *Bull v. Mitchell*, 47 Neb. 647; *Richards v. Waller*, 49 Neb. 639; *Thomson v. Shelton*, 49 Neb. 644; *City Missionary Society v. Reams*, 51 Neb. 225.

There was, however, filed subsequently to the rendition of said judgment a petition for a new trial on the ground of newly-discovered evidence material to the issues which had been determined by such judgment; and, on a hearing, the prayer of this petition was granted and a new trial was awarded. To test the correctness of this ruling a petition in error has been filed in this court wherein the case was docketed as "Gibbons et al. v. Kyner et al. No. 8312." The evidence claimed to be material was contained in an affidavit made by George W. E. Dorsey, in which, in substance, he stated that he had been the president of the Nebraska Mortgage & Investment Company from its organization in 1888 until some time in 1891; and that, while acting as such president prior to June 1, 1890, affiant had a conversation with Charles H. Smith, of the firm of C. H. Smith & Co., in regard to the manner of doing business between that firm and the Nebraska Mortgage & Investment Company. The portion of this affidavit claimed to be material is probably to be found within the following quotation, but just where the writer hereof is unable to determine: "The manner of doing business between said C. H. Smith & Co. and the Nebraska Mortgage & Investment Company was all discussed and the manner of doing business between other people under like circumstances was fully discussed and compared. By other people doing a like

business I refer to the business of making and collecting real estate loans where the western correspondent deals with the borrower, and the eastern correspondent deals directly with the lender, and where the money in making the loan passes from the lender to the eastern correspondent, thence to the western correspondent, thence to the borrower, and where, when collections are made, the money passes from the mortgagor to the western correspondent, thence to the eastern correspondent, thence to the mortgagee or lender. And the manner of making collections by such western correspondent was also discussed, and the trouble and expense that the Nebraska Mortgage & Investment Company was to in sending out notices to the borrowers from time to time, and that the principal and interest was about to mature and requests for prompt remittances of same in loans negotiated by it and its predecessor through Smith & Co., and in the collection and remittance of such interest and principal by said Nebraska Mortgage & Investment Company should thereafter be entitled to deduct exchange at the time of making such remittances as compensation to said Nebraska Mortgage & Investment Company for its work and expense in making such collections. And Mr. Smith expressed himself as a part of said conversation to the effect that, everything considered, other western correspondents did not deduct such exchange at the time of remitting, and that the Nebraska Mortgage & Investment Company should conform to the general custom and not deduct any such exchange, and it was agreed, as a part of said conversation between Mr. Smith as a member of the firm of C. H. Smith & Co. and myself acting as president of the Nebraska Mortgage & Investment Company, that said Nebraska Mortgage & Investment Company should look after the collection and remittance of the principal and interest of the loans negotiated through said Nebraska Mortgage & Investment Company and its predecessor and C. H. Smith & Co. without any charge therefor for exchange or otherwise."

The weak point in the defense of Mr. Kyner, originally, was the failure to show that C. H. Smith & Co. or the Nebraska Mortgage & Investment Company was the mortgagee's agent for receiving and paying interest or principal to such mortgagee. The mortgagee held in his possession the note and each coupon until some one was ready to pay them to him, and when one was paid he merely surrendered it as being paid. The inconsequential talk preceding the agreement of Mr. Dorsey to forbear exacting exchange was irrelevant to this question of agency. If it was intended to contradict C. H. Smith merely for the purpose of discrediting him it was likewise inadmissible, under the ruling of this court in *Nathan v. Sands*, 52 Neb. 660. In any view, the proposed testimony of Mr. Dorsey could not in the least strengthen the weak point in Mr. Kyner's defense; hence the petition for a new trial should have been denied and the order of the district court on this branch of the case is therefore reversed. It was in effect stipulated that on this branch the same judgment should be rendered in Avery against Kyner, No. 7716, and in Gibbons against Kyner, No. 7717, as in this case in this court. It is accordingly ordered that the judgments sought to be reviewed by Mr. Kyner as appellant be affirmed and that the orders granting new trials in such cases be reversed and that these cases be remanded to the district court for the entry of these judgments and orders.

JUDGMENTS ACCORDINGLY.