ASTORIA STATE BANK, Appellant, v. MARKWOOD et al., Respondents.

(156 N. W. 583.)

(File No. 3799.    Opinion filed March 4, 1916.    Rehearing granted April 11, 1916.)

1.  **Negotiable Instruments—Payment—Payment to Alleged Agent— Possession of Note—Rule of Law.**

     A negotiable note must be paid to the legal owner and holder at time of payment, and payment to any other person not in possession will not bind the legal owner, unless he has expressly or by implication authorized such other person to receive payment for him.

2.  **Same—Payment to Agent—Burden of Proof of Agency.**

     A person alleging payment of a negotiable note to one authorized by the legal owner and holder to receive such payment, has the burden of showing payment to the person so authorized.

3.  **Same—Payment to Agent—Evidence of Agency, Circumstantial Evidence—Sufficiency.**

     Authority of an agent of the owner and holder of a negotiable note to receive payment thereof, may be established by circumstances, and need not necessarily rest upon direct testimony.

4.  **Same—Payment to Agent—Ostensible Agency of Indorsee—Negligence of Owner—Statutes.**

     Where the owner and holder of indorsed mercantile paper, permits, without objection, another person not in possession thereof to make collections and receive payments of interest and principal from the maker on prior installments, such facts raise the implication of either actual or ostensible authority from such owner to receive payment of interest and principal thereafter made to such other person by the maker; and the fact that the person receiving such subsequent payments did not at any time have possession of the paper is not conclusive against the maker; and if the person receiving the prior payments had not authority to receive same, it was the owner's duty to immediately notify the maker; and such a case is within the meaning of Civ. Code, Sec. 2442, providing that where one of two innocent persons must suffer by the act of a

third, he by whose negligence it happened must be the suf-
ferer, and Secs. 1661, 1665, concerning ostensible agency and
the ostensible agent's authority.   **Held,** further, that the evi-
dence was sufficient to take the question of the original payee's
ostensible agency to receive payment for the owner to the
jury, within the meaning of said statutes.

Smith, J., dissenting; Gates, J., concurring in the dissent.

Appeal from Circuit Court, Beadle County.   Hon. ALVA E.
TAYLOR, Judge.

Action by Astoria State Bank, against C. T.Markwood, G. W.
Erickson, and Thomas Erickson, to recover on promissory notes.
From a judgment for defendants, and from an order denying a
new trial, plaintiff appeals.   Affirmed.

*Crawford & Warren,* for Appellant.

*C. A. Kelley,* and *James Byrnes,* for Respondents.

(1) To point one of the opinion, Appellant cited:   Hoff-
master v. Black, 74 Ohio State, 1, 84 N. E. 423, 14 American
and English Annotated Cases, 877; Corey v. Hunter, (N. D.)
84 N. W. 570.

(4) To point four of the opinion, Appellant cited:   Hollins-
head v. Stuart & Co., (N. D.) 77 N. W. 82; Fargo, et al., v.
Cravens, 9 S. D. 850; South Bend Toy Mfg. Co. v. Dak. F. &
M. Co., 3 S. D. 209; Kirby v. Western Wheeled Scrapper Co., 9
S. D. 623; Balcom v. O'Brien, 3 S. D. 425; Larpenteur v. Will-
iams, 12 S. D. 378; Corey v. Hunter, (N. D.) 84 N. W. 570;
Buchard v. Hill, (Minn.) 74 N. W. 165; 3 Ruling Cases at
Law, paragraph 521.

Respondents cited:   Quinn v. Dressbach et al., (Cal.) 16 Pac.
762; Reid et al. vs. Kellogg, 67 N. W. 687; Comp. Laws, Sec.
4730; Morgan v. Neal, (Idaho) 65 Pac. 66, 97 Am. St. Rep. 264;
Campbell v. Gowans et al., (Utah) 23 L. R. A. (N. S.) 414;
Edinburgh American Land & Mortgage Co. v. Noonan, 76 N.
W. 298, 11 S. D. 141.

McCOY, J.   On February 2, 1910, defendants executed and
delivered to one Windherst a series of six promissory notes for
$1,000 each, as part payment for a stock of merchandise sold and
delivered to defendants by Windherst.   One of said notes was
payable on or before March 2, 1910; two on or before February 1,
1911; two on or before February 2, 1911; and one on or before
February 2, 1912.   One of the notes due on or before February 1,

1911, had indorsed thereon a payment of $200 at the time of its delivery. All these notes were made payable at the James Valley Bank at Huron. Windherst indorsed and delivered to plaintiff, prior to maturity, in good faith, for the consideration of $3,800, four of said notes, namely, the two maturing on or before February 1, 1911, one maturing on or before February 2, 1911, and the one maturing on or before February 2, 1912. Plaintiff instituted this suit to recover on the note maturing February 2, 1912, alleging nonpayment thereof. Defendants admitted the execution and delivery of the note, and pleaded as an affirmative partial defense a payment thereon of $511.06. On the trial it appeared, without dispute, that defendants on September 18, 1913, paid on said note to Windherst the sum of $511.06. There was evidence tending to show that Windherst never paid this $511.06 to plaintiff. There was no evidence tending to show that Windherst had actual possession of said note at the time of said payment. At the close of the evidence plaintiff moved for a directed verdict on the grounds: (1) That the undisputed evidence shows that the said payment was made to a person not in possession of the note, and after defendants had knowledge that the note had been sold and delivered to plaintiff; (2) that there is no evidence to show the relation of principal and agent between plaintiff and Windherst; (3) that the note, being negotiable, could be discharged only by payment to the owner or person in possession thereof. The motion to direct a verdict was denied, and the issue as to such payment was submitted to the jury, and a verdict returned in favor of defendants. The appellant assigns as error the overruling of such motion.

[1-3] There can be no question but what the rule of law is that a negotiable note must be paid to the legal owner and holder at the time of such payment, and that a payment to any other person not in possession of the note will not bind the legal owner and holder, unless the legal owner has either expressly or by implication authorized such other person to receive such payment for him. The person alleging such payment has the burden of showing that the payment was made to a person authorized to receive the same. Actual authority of a person not the owner or possessor of a note to receive payment need not be established by direct testimony, but may be established by circumstances. Reid v.

Kellogg, 8 S. D. 596, 67 N. W. 687; McVay v. Bridgman, 21 S. D. 374, 112 N. W. 1138; Campbell v. Gowans, 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, and exhaustive note, 19 Ann. Cas. 660; Bautz v. Adams, 131 Wis. 152, 111 N. W. 69, 120 Am. St. Rep. 1030; Doe v. Callow, 64 Kan. 886, 67 Pac. 824; Hoffmaster v. Black, 78 Ohio St. 1, 84 N. E. 423 ,21 L. R. A. (N. S.) 52, 125 Am. St. Rep. 679, 14 Ann. Cas. 877; Doyle v. Corey, 170 Mass. 337, 49 N. E. 651. In this case, as we view the effect of the evidence, the defendants fully met the burden of proof by showing facts and circumstances warranting the trial court in denying plaintiff's motion to direct a verdict.

[4] The four notes assigned to plaintiff were executed and delivered at Huron, where defendants and Windherst then resided. Shortly after the making of said notes Windherst became a resident of Sherman, this state. The plaintiff bank was at all times located in the state of Illinois. The note sued upon in this action was the last to become due of those assigned to plaintiff. The first to be paid of the notes assigned to plaintiff was the one due February 1, 1911, on which $200 had been indorsed. On January 30, 1911, defendants paid to Windherst $952, of which $800 was to satisfy the principal unpaid on this note, and $152 was to apply on the interest of the other three notes held by plaintiff. Windherst sent this payment to plaintiff, and plaintiff applied $800 thereof on the principal of said note, and the remainder on the interest of the other notes on February 7, 1911, and on that date returned the canceled note to Windherst at Sherman, and thereafter Windherst sent the canceled note by mail to defendants. The other note due February 1, 1911, and the one due February 2, 1911, assigned to plaintiff, were not paid when due, but were paid by defendants by a check for $2,120 mailed to Windherst at Sherman on February 28, 1912. The plaintiff actually received the payment at its bank in Illinois on March 6, 1912, while on March 4th Windherst sent the canceled notes to defendants from Sherman by mail. Stamped across the face of each of these notes appears: "Paid Mar. 1, 1912, Sherman State Bank, Sherman, S. D." One of the defendants who had charge of the payment of said notes in substance testified that:

"In making these remittances to Windherst, I suppose we were making them to the owner of the notes, and did not know

anything about the bank's ownership until we received that letter in March after Windherst's death."

The letter here referred to bears date "March 2, 1914." The witness, continuing, further testified:

"We received a letter from plaintiff bank about March, 1912, asking us if we had made payment to Windherst on our note then due. In this letter they did not claim to own the notes, and nothing therein to indicate that they had any interest in them, not any more than possibly making collections for Windherst. We answered, and informed them we had sent the money to Windherst, and had expected a reply if it was not all right, and there was no reply, and we supposed it was all right. We had talked with Windherst a couple of times about extending the time of payment. He said he had put some of our notes up as collateral to a man in Illinois, but that he was looking after the collection of them himself. We never received any word from the bank granting us an extension of time. All our arrangements were with Windherst."

An officer of plaintiff bank, among other things, in substance testified, when explaining why Windherst had been permitted to collect and send the payments to plaintiff, that most of these payments were sent to plaintiff by Windherst before maturity, and that plaintiff could not say anything about it until it was due. Other written testimony of plaintiff conclusively shows that all the prior payments of principal on all prior notes were made after due; the most of them more than a year after due. This witness for plaintiff further testified that the letters asking for an extension of time came through Windherst to plaintiff; and this witness further testified that the two notes paid by the $2,120 payment might have been sent to the Sherman State Bank for collection, but that they were not sent to the James aVlley Bank of Huron, where they were payable, and in which city defendants resided. The letter of March 2, 1914, written to defendants by plaintiff after the death of Windherst, referred to in defendants' testimony, is as follows:

"our note given to Mr. J. H. Windherst was due on the 2d of Feb. Owing to the illness of Mr. Windherst, I suppose he overlooked the payment of the same. Since Mr. Windhurst's death I suppose that we will have to deal directly with each other,

and as the property on which the money was loaned is in your locality I think that you had better make arrangements to take up the paper. The date of the last interest payment is Feb. 2, 1913. The interest is 8 per cent. Upon receipt of Chicago or New York Exchange for the amount due I will mail same to you."

This testimony shows that plaintiff, without objection, permitted Windherst, the original payee, to collect and receive both principal and interest on all the prior due notes of the series held by plaintiff. The fact that plaintiff wrote defendants making inquiry as to whether defendants had made payments to Windherst, and defendants answered back that they had, and plaintiff made no reply or objection thereto, was something clearly tending to mislead defendants into the belief that payments so made were all right. When defendants so answered this inquiry, it was plaintiff's plain duty, if Windherst was not authorized by plaintiff to receive such payments, to have immediately notified defendants. Plaintiff could not remain silent under those circumstances and not thereafter be bound by the acts of Windherst in receiving payments of principal and interest on any of said notes. The fact that, when defendants desired an extension of time for payment on the notes held by plaintiff, they applied to Windherst, and were granted such extension by and through him, was sufficient to warrant defendants in the belief that Windherst was the owner of said notes or acting as the agent of the person who held them as collateral. Plaintiff authorized such extension of time through Windherst. The clause, "Since Mr. Windherst's death I suppose we will have to deal directly with each other," contained in the letter from plaintiff to defendants, although written after the payment in question, clearly shows the situation of affairs existing prior to Windherst's death. This letter clearly indicates that plaintiff had been transacting its business in relation to the collection of these notes from defendants through Windherst prior to his death. The correspondence between plaintiff and Windherst shows that plaintiff had knowledge that these notes assigned to plaintiff were given as a part of the transaction of the said sale of the stock of merchandise.

Such circumstances as these were amply sufficient to warrant the jury in finding that plaintiff authorized Windherst to receive the payment on the note in question. All the cases hereto-

fore cited supra hold, under less strong surrounding circumstances than appear in the case present, that, where the owner and holder of commercial paper, without objection, permits another person not in possession of such paper to make collections and receive payments of interest and principal from the payor on prior installments of such paper, such facts are sufficient from which to imply either actual or ostensible authority from such owner to receive payments of interest and principal thereafter made to such other person by the makers of such negotiable paper. These cases hold that the fact that such person who received such subsequent payments had not at any time the possession of such paper is not conclusive as against the payor, and that, if such person to whom such prior payments were made had no authority to receive the same, it was the duty of the owner and holder of such paper to at once notify the payor, thus bringing the case within the rule that:

"Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer."

We are of the view that sections 2442, 1661, and 1675, Civil Code, were intended to meet just such circumstances as appear in the case at bar. Reid v. Kellogg and McVay v. Bridgman, supra.

Other assignments of error appear in the record relating to the rejection or reception of evidence and the overruling of the motion for new trial, but, as such assignments of error are based substantially upon the same proposition already disposed of, no further reference thereto is necessary. Finding no error in the reocrd, the order and judgment appealed from are affirmed.

SMITH, J. (dissenting). I am not satisfied with the reasoning of my majority associates in this case. It seems to me there is error in confusing "proof of actual agency by circumstantial evidence" with proof of "ostensible agency." The two things are essentially different. The rule of ostensible agency has its foundation in the doctrine of estoppel, and arises upon proof of circumstances which do not necessarily prove actual agency. Ostensible agency is proved by evidence which tends to show that:

"The principal intentionally or by want of ordinary care causes a third person *to believe* another to be his agent who is not really employed by him." Civ. Code, § 1661.

The most careful scrutiny of the record fails to show a scrap of competent evidence, circumstantial or direct, tending to show that Windherst had actual authority to receive payments on any of the notes held by the plaintiff bank. Most of the evidence referred to in the majority opinion as circumstantial evidence tending to prove actual agency consists of statements alleged to have been made by Windherst himself to defendants, and without proof of any knowledge thereof on the part of plaintiff. On the theory of actual agency such statements were absolutely incompetent under the elementary rule that agency cannot be proved by statements of the alleged agent. This evidence was objected to, and its reception is assigned as error on this appeal. Calling this evidence "circumstantial" does not make it competent. The extent to which evidence assumed to prove actual agency is confused with evidence of ostensible agency is shown by the statement in the majority opinion:

"The fact that plaintiff wrote defendants making inquiry as to whether defendants had made payments to Windherst, and defendants answered back that they had, and plaintiff made no reply or objection thereto, was something clearly tending to mislead defendants in the belief that payments so made were all right. * * * Plaintiff could not remain silent under those circumstances and not thereafter be bound by the acts of Windherst in receiving payments of principal and interest on any of said notes. * * * Such circumstances as these were amply sufficient to warrant the jury in *finding that plaintiff authorized* Windherst to receive the payment on the note in question."

The undisputed evidence discloses that plaintiff had never given Windherst possession of any of the notes for collection or otherwise until after they had been paid. It is equally clear that defendants knew prior to the intrusting their money to Windherst that he had either sold or hypothecated the notes, and that they were not in his possession. It is settled beyond controversy that, where payment has been made to a person other than the holder or person in possession of the note, the burden is on the defendant to prove that the person to whom he made the payment was the duly authorized, or ostensible agent of the holder of the note, or that the money actually reached his hands, or that the payment was ratified by him. Olson v. Day, 23 S. D. 150, 120 N.

W. 883, 20 Ann. Cas. 516, note page 520, and cases cited. The record is wholly barren of direct evidence that Windherst had authority from plaintiff to collect any of the notes. The officers of the plaintiff bank absolutely deny that any such authority was ever given.

To my mind, the only question in the case is whether the evidence was sufficient to justify the court in submitting to the jury the matter of ostensible agency. An ostensible agency arises when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him. Evidence as to the time and manner of payment of the other Windherst notes held by plaintiff bank would be competent, if sufficient to prove ostensible agency. On two prior occasions defendants had placed in Windherst's hands money to be applied on these notes. It conclusively appears that the plaintiff bank had no knowledge of any of such payments to Windherst until the time it received the money from him, and that none of the notes were ever in his possession or delivered to him by plaintiff until after payment and cancellation. It is perfectly clear, therefore, that any finding of ostensible agency on the part of Windherst must rest solely upon inferences to be drawn from these payments, and from appellant's letter of March 2, 1914. So far as material, the letter is as follows:

"Your note given to Mr. J. H. Windherst was due on the 2d of Feb. Owing to the illness of Mr. Windherst, I suppose he *overlooked the payment* of the same. Since Mr. Windherst's death I suppose that we will have to deal directly with each other, and as the property on which the money was loaned is in your locality I think you had better make arrangements to take up the paper. The date of the last interest payment is Feb. 2, 1913."

This letter can afford no evidence of *ostensible* agency, for the simple reason that it was not written until some five months after defendants had delivered the $511.06 to Windherst, and therefore could not have caused or influenced them to deliver the money to him. The only contention possible would be that the statements in the letter might tend to prove that appellant bank had theretofore given Windherst actual authority to receive payments. I am convinced, however, that, under all the circumstances disclosed, the statements in this letter should not be held to afford

any evidence whatever that appellant had given Windherst such authority. It must be borne in mind that appellant was a stranger to the defendants, and had a legal right to consider Windherst bound for payment of the indebtedness equally with the defendants. That appellant considered him one of its debtors, and looked to him for payment, is evidenced by the statement that:

"Owing to his ·[Windherst's] illness, I suppose he overlooked the payment of the same."

It cannot be contended, under the evidence in the record, that appellant, when this letter was written, had any knowledge that defendants had paid this money to Windherst. It could not therefore be construed as meaning that Windherst had failed to pay over to the plaintiff money which he had received for it from the defendants. When the letter was written, Windherst was dead, and the most natural thing the bank could do was to go directly to the others obligated upon the notes, and say to them, as it did:

"I suppose we will have to deal directly with each other, . * * * and think you had better make arrangements to take up the paper."

These statements are susceptible of but one fair interpretation or inference, which is that plaintiff, having dealt with Windherst before his death as one of its joint debtors, must now deal directly with Markwood and Erickson as its surviving debtors. There is no evidence in the record which tends in the smallest degree to prove that plaintiff ever intended, or by want of any ordinary care caused, defendants to believe that Windherst was its agent authorized to collect these notes. The mere delivery of the canceled notes to Winherst after payment was not an act from which any such inference might be drawn. If defendants had intrusted the money to a messenger who had paid it to plaintiff and received the canceled notes, it would hardly be contended that defendants, because of such acts, had been led to believe that plaintiff had authorized such messenger to receive other payments. As is said in Hollinshead v. John Stuart & Co., 8 N. D.. 35, 43, 77 N. W. 91, 92, 42 L. R. A. 659, on rehearing:

"'The owner of the note was not the cause of his making the payments, and did not induce him to make them, but he acted solely upon his own supposition that the mortgagee was himself

the owner of the note and mortgage.' * * * Respondent knew the note was negotiable, and that the quality of negotiability would adhere to it every minute until it reached maturity. He knew it was intended to pass from owner to owner by indorsement, and that it was liable thus to pass at any moment, and he knew that the last person thus receiving it could require at his hands the full amount of the note. That the note belonged, or he thought it belonged, to the Globe Investment Company when one coupon matured, furnished him no warrant for believing that it would belong to the same party when the next coupon matured, or when the principal fell due. He had in his own hands the means of absolute protection. He had only to see to it that he received his note when he paid his money. If he neglected this simple requirement, demanded not more by the law than by common prudence, he paid at his peril; and, if loss occurs, he must bear it."

The fact that appellant, prior to the payment in controversy, had accepted payments sent to it by Windherst, their co-obligor, and had canceled and delivered to him the other notes, is wholly insufficient to establish either actual or ostensible agency, or to estop plaintiff from denying the authority of Windherst to accept payment on its behalf. Hollinshead v. John Stuart Co., supra; Stolzman v. Wyman, 8 N. D. 108, 77 N. W. 285.

The decisions of this court in Reid v. Kellogg and McVay v. Bridgman, cited in the majority opinion, merely apply the rule of ostensible agency to facts wholly and radically different from those in the case at bar, and, in my judgment, afford no support whatever for the conclusion announced.

As is said in Loizeaux v. Fremder, 123 Wis. 193, 101 N. W. 423:

"Negotiability being established, there results the rule that the debtor's duty is to pay to the person who owns the note at the time of payment, or to an agent of such owner actually authorized to receive payment; that no payment to any other person can be of any effect unless made in reliance upon the actual possession of the note, *or upon words or acts of the owner so unambigously declaring the authority of such other person to receive such particular payment as to estop the owner from denying such authority*. [The italics are ours.] Possession of a negotiable in-

strument is generally the sole adequate evidence of apparent authority to collect upon which the debtor has any right to rely, or can, without negligence, do so."

This rule, it is said in the Loizeaux case, supra—

"is so simple, and, once understood, furnishes so easy and sure a means for both debtor and owner to protect themselves against unauthorized acts of others, that it ought not to be weakened or confused. The holder can always be safe by retaining the instrument in his possession; the debtor by refusing payment without actual presentation. It is justified in application to negotiable paper distinctively from other property by the very dominant purpose of easy and probable transfer at any moment, so that what may be true as to ownership of such paper on one day is likely to have changed on the next. Of the probability of such change the negotiability of the instrument is a continual warning."

The rule thus announced has been adopted in nearly all the states either by judicial decision or statutory enactment. In this state it has been in force for many years by express statutory declaration. Civ. Code, § 2227, subd. 2.

As to the burden of proof in such cases, see Olson v. Day, 23 S. D. 150, 120 N. W. 883, 20 Ann. Cas. 516, and note; Bull v. Mitchell, 47 Neb. 647, 66 N. W. 632; Jenkins v. Shinn, 55 Ark. 347, 18 S. W. 240; State Nat. Bank v. Hyatt, 75 Ark. 170, 86 S. W. 1002, 112 Am. St. Rep. 50, 5 Ann. Cas. 296; Cheney v. Libby, 134 U. S. 68, 10 Sup. Ct. 498, 33 L. Ed. 818; Winer v. Bank, 89 Ark. 435, 117 S. W. 232, 131 Am. St. Rep. 102.

As was said by the court in Loizeaux v. Fremder, supra:

"The strain upon the human sympathies is frequently such as to render difficult adherence to settled rules of law, which in individual cases may seem to cast the burden of the wrong on him who can least well bear it. Such rules, however, became established upon many and varied considerations as likely, in the long run, to approximate most nearly to justice, and to minimize the wrong as far as possible, and must be applied by a court until, if the desired results are not obtained, the lawmaking power shall readjust them."

I am forced to the conclusion that the trial court erred in overruling plaintiff's motion for a directed verdict at the conclusion of all the evidence.

The order and judgment of the trial court should be reversed. GATES, J., concurs in the views expressed by SMITH, J.