No. 90-474

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

LA RUE SMITH,

    Plaintiff and Appellant,

    v.

CLIFFORD FLADSTOL and NANCY
FLADSTOL, Husband and Wife,

    Defendants and Respondents.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

       For Appellant:

       La Rue Smith, Great Falls, Montana

       For Respondent:

       Mark Bauer, Great Falls, Montana

FILED

Filed:   MAR 21 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:  February 14, 1991

Decided:  March 21, 1991

Clerk

Hon. Terry N. Trieweiler delivered the Opinion of the Court.

La Rue Smith appeals from a judgment entered in the District Court, Eighth Judicial District, Cascade County, denying attorney fees and costs. We affirm the District Court.

The dispositive issue in this case is whether substantial evidence existed to support the District Court's finding that attorney Smith was engaged to perform limited duties and was paid in full for those services.

Respondent Nancy Fladstol contacted Smith by telephone on December 17, 1986 about retaining Smith as her attorney. An appointment was scheduled for the following day. Mrs. Fladstol informed Smith of pending proceedings to revoke the custodial rights of the Fladstols in their grandson, Louis Jackson. The action to set aside the custody decree was initiated by Kevin Douglas Hall, the father of the child and the son of Nancy Fladstol. Mrs. Fladstol requested Smith to represent her at a scheduled meeting with her son and his attorney.

Smith agreed to accompany Mrs. Fladstol to the December 22, 1986 meeting in the offices of Kevin Douglas Hall's attorney. Pursuant to his representation of Fladstol, Smith accepted a $75 retainer fee.

What transpired at the December 22 meeting is at issue. Smith contends that Hall admitted his affidavit regarding his mother's incompetence as a custodial parent was false, and that a stipulation to that effect would be prepared. Fladstol, Hall, and his attorney deny any such statement or agreement. Fladstol

asserts that the agreement reached at the meeting was to allow transfer of the custody of Louis to his father, and that Hall's attorney would prepare documentation to that effect. Fladstol testified that she assumed the agreement would resolve all differences between the parties and that no further work would need to be done.

The record shows that Smith refused to enter into any stipulation. Smith continued to prepare documents and do research on behalf of the Fladstols until he was discharged by Mrs. Fladstol on December 29, 1986, for his refusal to sign the stipulation prepared by Hall's attorney.

Smith initiated suit for fees and costs, and a trial de novo took place on January 2, 1990. The trial court found Smith had been retained as counsel up to and including the December 22, 1986 meeting, that he had been fully compensated for his work to that time, and that all other work was unnecessary to the proper representation of Fladstols' interest in the matter. Accordingly, the court entered judgment in favor of Fladstols, including costs. This appeal ensued.

It is a well-established rule in Montana that the attorney/client relationship is one of agency. Clinton v. Miller (1951), 124 Mont. 463, 226 P.2d 487. It is the lawyer's role to advocate the client's interest. In re Marriage of Rolfe (1985), 216 Mont. 39, 699 P.2d 79. Contrary to Smith's assertions, the record shows that the parties agreed to enter into a stipulation, and thereby avoid prolonging the proceedings. Hall's attorney

testified that:

> The gist of the conversation was about changing custody from grandma to son at that time. How it was to be done was discussed. I told them I had done it before by stipulation by agreement between the parties. There was discussion in regards to a little bit that there would still have to be a hearing because we still had one other party that was concerned.

> The essence of the end of the meeting was that I was to draft the document, have it ready, submit it to La Rue, and I would review it. And when we left the meeting it was my understanding that we had reached an agreement. That is between these parties, all issues had been settled.

Hall testified similarly:

Q: What was the ultimate outcome of the meeting on December 22nd in your attorney's office?

A: The ultimate outcome was is that she agreed to sign a stipulation stating that she would not contest the custody of Louis being transferred over to me is what I believe.

The direct evidence of one witness is sufficient for proof of any fact. Section 26-1-301, MCA. Here we have the testimony of several witnesses that the issues had been settled at the meeting. There was substantial evidence before the court that the continuing actions by Smith were unnecessary after the meeting was conducted, and we will not disturb the District Court's finding absent a showing of clear error. Rule 52(a), M.R.Civ.P.

There was also substantial evidence to support the amount of attorney fees awarded. It was undisputed that defendants had agreed to pay plaintiff $35 per hour for his services. Following the December 22 meeting, plaintiff was paid $75. There was no evidence offered to prove that based upon the amount of time spent on plaintiff's behalf that amount was inadequate as of that date.

For these reasons, the judgment of the District Court is affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

5