VRT, INC., A NEBRASKA CORPORATION, APPELLEE, V. DUTTON–LAINSON COMPANY, A NEBRASKA CORPORATION, APPELLANT.

530 N.W.2d 619

Filed April 21, 1995. No. S-93-907.

James W.R. Brown and James R. Brown, of Brown & Brown, for appellant.

Carl J. Sjulin, of Rembolt Ludtke Parker & Berger, for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ., and RONIN, D.J., Retired.

CAPORALE, J.

The plaintiff–appellee seller, VRT, Inc., formerly known as Sanitas, Inc., sought a judgment declaring its right to past and future royalties under a provision within a purchase and sale contract. VRT alleged that the defendant–appellant buyer, Dutton–Lainson Company, breached its contract with VRT by failing to pay VRT royalties contemplated under the royalty provision. The district court ruled that Dutton–Lainson was obligated to pay both past-due and future royalties as provided

in the contract. Dutton–Lainson thereupon appealed to the Nebraska Court of Appeals, asserting, in summary, that the district court erred in finding that VRT had substantially performed its obligation under the contract. Under our authority to regulate the caseloads of the appellate courts, we, on our motion, ordered the matter removed to this court. For the reasons hereinafter set forth, we now reverse the judgment of the district court and remand the cause for dismissal.

Whether a declaratory judgment action is treated as an action at law or one in equity is determined by the nature of the dispute. *Nebraska Pub. Emp. v. City of Omaha, ante* p. 468, 528 N.W.2d 297 (1995). As the dispute here arises from the alleged breach of a contract, the action is one at law. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). Being a law action tried to the court, the findings of the district court will not be disturbed on appeal unless clearly wrong. See *Kuehl v. Diesel Power Equip. Co.*, 228 Neb. 353, 422 N.W.2d 361 (1988).

Sanitas was formed to manufacture, market, and distribute James Vanderheiden's invention, which improved devices used in hospitals and nursing homes to lift and move patients, hereinafter referred to as the patient care equipment.

After retaining an attorney to file a patent application on the patient care equipment, Sanitas sought out a manufacturer. Having been told by Sanitas that a patent application on the patient care equipment had been filed and having been assured by its own patent attorney that there was good reason to expect that a patent would issue, Dutton–Lainson and Sanitas executed a contract whereunder Sanitas sold and Dutton–Lainson purchased those Sanitas assets which related to the patient care equipment. Section 1 of the contract, entitled "Purchased Assets," provides that in addition to certain inventory, tooling, jigs, fixturing devices, and equipment, Sanitas shall sell and assign and Dutton–Lainson shall purchase and acquire the following assets:

All current patents, patent applications, inventions, blueprints, drawings, plans, specifications, procedures and confidential information related to the production and marketing of Sanitas' Patient Care Equipment and any

such items acquired, applied for or produced by Sanitas during the five-year period following the date of this Agreement; all vendor and sales information related to the marketing of the Sanitas Patient Care Equipment including customer lists and other marketing information; and the name "Sanitas, Inc." and any other related or similar trade names used in the production or marketing of the Patient Care Equipment.

Section 2 of the contract is labeled "Payment" and provides in relevant part:

The purchase price of the assets described . . . above shall be an amount equal to five percent (5%) of the annual billed and collected sales of the Patient Care Equipment products produced by Dutton–Lainson from the plans and inventions acquired from Sanitas. Such amount shall be payable for the 10-year period following the close of this purchase and sale or, if longer, the period of any patent or patents issued upon the Patient Care Equipment; provided, however, that Dutton–Lainson shall not be required to make any payments for any period after the ten-year period described above, if (1) Dutton–Lainson reasonably determines that the value of the patent claims or the likelihood of success in an infringement action does not justify the cost of litigating the validity of the patent or of seeking to enjoin infringement; (2) Dutton–Lainson ceases to use the invention disclosed by the patent claims; or (3) Dutton–Lainson receives an opinion from qualified patent counsel that the patent claims are invalid and thereafter institutes no action to enforce them. Dutton–Lainson's billed and collected sales shall be determined for each quarter of the year and payment shall be made to Sanitas within thirty (30) days following the close of each quarter of the year.

The contract further requires Sanitas to deliver to Dutton–Lainson at the closing "[s]pecific assignments to the assets described . . . above as shall be reasonably required by Dutton–Lainson."

At the closing, Sanitas delivered to Dutton–Lainson a document labeled "BILL OF SALE AND ASSIGNMENT,"

assigning to Dutton–Lainson all of its "current inventions, blueprints, drawings, plans, specifications, procedures and confidential information; all vendor and sales information including customer lists and other marketing information; and the name Sanitas, Inc. and any other related or similar trade name relating to the production and marketing of Sanitas, Inc.'s Patient Care Equipment." Sanitas also delivered documents purporting to assign to Dutton–Lainson the patent application and Sanitas' interest in the invention disclosed therein. Sanitas thereafter changed its name to VRT, Inc. Although the contract refers to patents and applications for patents, there was but one application and it referred to the patent being sought. There was no other patent. Dutton–Lainson produced the patient care equipment and sold it with some modifications to the invention; part of the invention was not being used at all because the design was unstable.

It turns out that Sanitas' attorney had not filed the patent application when he represented that he had and did not file it until after the parties executed the contract. It was stipulated that because of the late filing, a patent could not issue. As a result, VRT filed an action for professional negligence against its attorney, claiming that the attorney had been negligent in failing to file the patent application, in concealing his failure, and in providing false information. VRT further claimed that as a result of those actions, it was forced to incur substantial legal fees to enforce the royalty contract against Dutton–Lainson and sought recovery from its attorney for the loss of royalties beyond the 10th year. In addition, VRT claimed its future royalty payments would be reduced because Dutton–Lainson would not have the exclusive right to manufacture and market the patient care equipment. VRT and its attorney ultimately settled the action.

To successfully bring an action on a contract, a plaintiff must first establish that the plaintiff substantially performed the plaintiff's obligations under the contract. See, *ADC–I, Ltd. v. Pan American Fuels, ante* p. 71, 525 N.W.2d 190 (1994); *First Data Resources, Inc. v. Omaha Steaks Int., Inc.*, 209 Neb. 327, 307 N.W.2d 790 (1981). To establish substantial performance under a contract, any deviations from the contract must be

relatively minor and unimportant. *Lange Indus. v. Hallam Grain Co.*, 244 Neb. 465, 507 N.W.2d 465 (1993). If there is substantial performance, a contract action may be maintained but without prejudice to any showing of damage on the part of the defendant for failure to receive full and complete performance. *Church of the Holy Spirit v. Bevco, Inc.*, 215 Neb. 299, 338 N.W.2d 601 (1983).

Substantial performance is shown when the following circumstances are established by the evidence: (1) The party made an honest endeavor in good faith to perform its part of the contract, (2) the results of the endeavor are beneficial to the other party, and (3) such benefits are retained by the other party. If any one of the circumstances is not established, the performance is not substantial and the party has no right to recover. *Lange Bldg. & Farm Supply v. Open Circle "R"*, 216 Neb. 1, 342 N.W.2d 360 (1983). Substantial performance is a relative term and whether it exists is a question to be determined in each case with reference to the existing facts and circumstances. *First Data Resources, Inc., supra.*

The relationship between attorney and client is one of agency. *Spier v. Thomas*, 131 Neb. 579, 269 N.W. 61 (1936). See, also, *Professional Service Industries, Inc. v. Kimbrell*, 758 F. Supp. 676 (D. Kan. 1991); *Jensen v. Snellings*, 636 F. Supp. 1305 (E.D. La. 1986), *affirmed in part, reversed in part* 841 F.2d 600 (5th Cir. 1988); *Smith v. Fladstol*, 248 Mont. 18, 807 P.2d 1361 (1991); *Peterson v. Worthen Bank & Trust Co.*, 296 Ark. 201, 753 S.W.2d 278 (1988); *Security Bank v. Klicker*, 142 Wis. 2d 289, 418 N.W.2d 27 (Wis. App. 1987); *Jarnagin v. Terry*, 807 S.W.2d 190 (Mo. App. 1991); *In re Estate of Maslowski*, 204 Ill. App. 3d 379, 561 N.E.2d 1183 (1990); *Creative Restaurants v. Memphis*, 795 S.W.2d 672 (Tenn. App. 1990); *Boros, P.A., v. Carter, M.D., P.A.*, 537 So. 2d 1134 (Fla. App. 1989); *Newell v. Brown*, 187 Ga. App. 9, 369 S.E.2d 499 (1988); *Burger v. Brookhaven Med. Arts Bldg.*, 131 A.D.2d 622, 516 N.Y.S.2d 705 (1987). Therefore, the general agency rules of law apply to the relation of attorney–client.

Consequently, the omissions and commissions of an attorney are to be regarded as the acts of the client whom the attorney represents, and the attorney's neglect is equivalent to the neglect

of the client. *In re Marriage of Castor*, 249 Mont. 495, 817 P.2d 665 (1991); *Graham v. Town of Loris*, 272 S.C. 442, 248 S.E.2d 594 (1978); *International Vacuum, Inc. v. Owens*, 439 N.E.2d 188 (Ind. App. 1982); *Kaslavage v. West Kern Cty. Water Dist.*, 84 Cal. App. 3d 529, 148 Cal. Rptr. 729 (1978). Moreover, a principal holding out an agent as having authority to represent the principal and thereby asserting or impliedly admitting that the agent is worthy of trust and confidence is bound by all the agent's acts within the apparent scope of the employment. Hence, the principal may be held responsible for the fraudulent acts of the agent. *Berkovitz v. Morton–Gregson Co.*, 112 Neb. 154, 198 N.W. 868 (1924); *McFadden v. Lynn*, 49 Ill. App. 166 (1892). Indeed, we have written: " 'Where one of two innocent persons must suffer through the misfeasance of the agent of one, that one must suffer who has placed the agent in a position to perpetrate the fraud complained of.' " *Berkovitz*, 112 Neb. at 159, 198 N.W. at 869, quoting *Bull v. Mitchell*, 47 Neb. 647, 66 N.W. 632 (1896). See, also, *Rehmeyer v. Lysinger*, 109 Neb. 805, 192 N.W. 337 (1923).

Accordingly, the client is bound by the acts, omissions, neglect, and fraud of the client's attorney when such is within the attorney's scope of express, implied, apparent, or ostensible authority. The misrepresentation of VRT's attorney is therefore imputable to VRT.

The contract reveals that the very essence of the transaction was to enable Dutton–Lainson to manufacture, market, and distribute the improvements which were the subject of the patent application. While Dutton–Lainson took the risk that, for reasons beyond the control of the parties, a patent might not issue, Dutton–Lainson did not bargain for the certainty that a patent would not issue because, contrary to the representation made to it, no application had been filed.

Thus, VRT's failure to deliver and assign a filed application was not a relatively minor and unimportant deviation from VRT's obligation. As a consequence, VRT's misrepresentation with regard to the application means there was no honest endeavor in good faith on its part to perform its part of the contract. It therefore necessarily follows that there was no substantial performance on its part and that it is precluded from

maintaining this action against Dutton–Lainson.

As revealed in the first paragraph hereof, the judgment of the district court is reversed and the cause remanded for dismissal.

REVERSED AND REMANDED.

CONNOLLY, J., not participating.