### PICKFORD v. PEEBLES *et al.*

T. executed and delivered to D. a promissory note and also a trust deed, in the name of a third party as trustee, to secure payment of the same. D. transferred the note for value before maturity, but executed no formal assignment of the security. T., the maker of the note, subsequently sold the property described in the trust deed to an innocent purchaser for value, who had no notice of the transaction other than that disclosed by the county records, and agreed to give such purchaser a clear title. T., obtained from the duly authorized agent of D., a release of the property, executed in the name of the trustee in the trust deed, which was duly recorded. *Held*, that the purchaser of the note having failed and neglected to take and record an assignment of the trust security, could not enforce his lien upon the property as against such innocent purchaser.

(Syllabus by the Court. Opinion filed June 15, 1895.)

Appeal from circuit court, Clay county. Hon. D. HANEY, Judge.

Action to foreclose a mortgage. From the judgment rendered plaintiff appeals. Affirmed.

The facts are stated in the opinion.

*R. J. Gamble* and *R. B.. Tripp,* for appellant.

The release of the security for a negotiable note, made with-- out any authority from the owner and holder thereof, does not ef- fect his right to enforce the security. Carpenter v. Longon, 16 Wall. 271; Ins. Co. v. Eldredge, 102 U. S. 545; Keohan v. Smith, 97 Ill. 156; Burhause v. Hutcheson, 25 Kan. 625; Lee v. Clark, 1 S. W. 142; Hogerman v. Sulton, 4 Id. 73; Vandercook v. Baker, 48 Ia. 199; Mortendale v. Burch, 27 Id. 291; Braley v. Ellis, 71 Ia. 155; Sweet v. Stork, 31 Fed. 858; Gordon v. Mulhan, 13 Wis. 22.

All that relates to the nature and validity of a contract is governed by the law of the place where executed. Baxter v. Tal- bot, 28 N. E. 164; Scudden v. Bank, 91 V. S. 406; Pratt v. Adams, 7 Paige 638; Joslin v. Miller, 14 Neb. 91; Olmstead v. New, 11 Id. 487; Thompson v. Edwards, 85 Ind. 421; Hoyt v. Thompson, 19 N. J. 224; Milliken v. Pratt, 125 Mass. 374; Richards v. Barlow, 140 Id. 218; Shoe v. Wood, 142 Id. 563; Howenstein v. Barnes, 5 Dillon 482; Wood v. Ripley, 11 Hump. 194; Brown v. Am. Co. 31 Fed. 519; New v. Vader, 28 Id. 268; Penensula v. Shaud, 3 Moore 272; 2 Jacob's Fish. Dig. 2258; Scott v. Pilkington, Id. 2257. A maker of securities is not bound to pay them unless they are produced and their absense raises a presumption against him which he is bound to remove by proof of the agent's authority with whom he deals. Smith v. Kidd, 68 N. Y. 130; Williams v. Walker, 2 Sandf. Ch. 325; Kellogg v. Smith, 26 N. Y. 18; Clark v. Ingelstrom, 51 How. Pr. 407; Guilford v. Stacer, 53 Ga. 618; Brown v. Blydenburg, 7 N. Y. 141; Security v. Graybeal, 52 N. W. 497; Cooley v. Willard, 34 Ill. 68; Keohaue v. Smith, 97 Id. 156. Though an agent has authority to receive payment of an obligation, this does not authorize him to receive it before it is due. Mechem, § 380; Doubleday v. Kress, 50 N. Y. 410; Camp-- bell v. Hassel, 1 Stark 233; Fellows v. Northrud, 39 N. Y. 117; Hutchings v. Clark, 64 Cal. 228. Nor can he receive anything but money under such authority. Hayes v. Lynn, 7 Watts. 524; Mc- Culloch v. McKee, 16 Pa. St. 289; Robinson v. Anderson, 106

Ind. 152; Miller v. Edmonston, 8 Blackf. 291; Hayman v. Beringer, 1 Abb. 315.

*Joy, Hudson, Call & Joy,* for respondent.

In the absence of any evidence, the presumption is that the laws of other states are similar to our own and that the holdings of their courts are in accordance with those of ours. Thomas v. Pendleton, 46 N. W. 180; St. Louis v. Weaver, 11 Pac. 408; Crafts v. Clark, 38 Ia. 237; Hadley v. Gregory, 57 Ia. 157; Walsh v. Dark, 12 Wis. 709; Cooper v. Reaney, 4 Minn. 413; Houghtaling v. Ball, 19 Mo. 84; Terrett v. Woodruff, 19 Vt. 183. The title of an assignee to a chose in action is not complete except as against the assignor until notice of the transfer has been given to the debtor. Loomis v. Loomis, 26 Vt. 208; Campell v. Day, 16 Vt. 568; Heernans v. Ellsworth, 64 N. Y. 169; Dodd v. Brotl, 1 Minn. 205; McWilliams v. Webb, 32 Ia. 507; Noble v. Thompson, 79 Pa. St. 354; Randolph Comm. Paper, 788; Bishop Cont. 1180.

CORSON, P. J. This action was brought in the circuit court of Clay county to foreclose a mortgage given by the defendant F. M. Tomlinson on land now owned and occupied by the defendant Peebles. The facts, as they appear from the record, are substantially as follows: One of the defendants, J. M. Dunn, resided in the city of Le Mars, state of Iowa, from the year 1883 to 1890, and was engaged in the business of loaning money on real estate and chattel security. P. M. Dunn, another of the defendants, was his wife, and during this period assisted him in his busines, and in his absence had charge of it. Quite a large part of the business of J. M. Dunn was done in the name of his wife. W. B. Dunn, another of the defendants, was J. M. Dunn's brother, and resided at Grinnell, Iowa, and was engaged in farming. Some of the loans made by J. M. Dunn were made in the name of his brother, but it seems this was done without the knowledge or consent of this brother, and against his wishes. On the 20th of June, 1885, the defendant F. M. Tomlinson negotiated a loan of J. M. Dunn of $1,000 and delivered to him a note for that amount, made

payable to P. M. Dunn, the wife. To secure the note Tomlinson executed a trust deed on land situated and lying in Clay county, S. D., which is the land in controversy, to W. B. Dunn, as trustee, for the benefit of P. M. Dunn; and soon after the execution of the note and mortgage, J. M. Dunn sent the paper to brokers residing in Boston, Mass., for negotiation, and it was sold to the plaintiff for value. The note was executed by the defendant F. M. Tomlinson to one of the defendants, P. M. Dunn. The trust deed to secure it was executed by Tomlinson and his wife, the defendant, Clara C. Tomlinson, to P. M. Dunn as beneficiary, and W. B. Dunn was named the trustee. The note and interest coupons attached were endorsed and delivered to Jeffries & Son, the brokers in Boston, who at once for full value indorsed them to the plaintiff in this action. The trust deed or mortgage, as soon as it was recorded, was delivered to the plaintiff. On the 16th day of July, 1886, Tomlinson sold the land in controversy to Peebles, the respondent, for value, and agreed that he would give him a perfect title. On the same day Tomlinson made an application to J. M. Dunn for a release of the mortgage in controversy, and for that purpose gave J. M. Dunn a temporary duebill for the amount due on the prior note secured by the trust deed. Thereupon J. M. Dunn, in the presence of Tomlinson, executed a release of the mortgage, signing the name of W. B. Dunn to the instrument, and acknowledging it by himself as a notary public. This release was recorded in Clay county, and purported to have been executed by the trustee. At the time the note was given by Tomlinson for the release, J. M. Dunn did not have the notes for which the security was given in his possession, nor were they given up to the defendant Tomlinson, nor have they ever been so delivered. The plaintiff brings this action to foreclose his trust deed or mortgage, and in his prayer asks for a sale of the land. Peebles was the only defendant that answered. Upon the hearing the court below held that the release, given as stated above, operated to discharge the security, and denied the plaintiff a decree of foreclosure. From that judgment this appeal is taken.

The counsel for the respective parties, in their briefs and in their oral arguments, discussed at some length the question as to whether or not the note given by Tomlinson to Mrs. Dunn, and transferred to the plaintiff was negotiable; but in the view we take of the case, a discussion of this question is not necessary as between the plaintiff and the defendent Peebles. As between these parties the question is as to the priority and validity of the release or discharge of the trust deed. That when Peebles purchased the property there was no assignment, in any form, of the trust deed or mortgage of record in the office of the county recorder of Clay county is conceded; and it was not shown and it is not claimed, that Peebles had any notice or knowledge of the transaction between Tomlinson and the Dunns, or between the Dunns and the plaintiff, other than that disclosed by the county records. The court finds that Peebles was a purchaser in good faith for value and without notice. This being so, the only question to be considered is, was Peebles justified in relying upon the discharge made in the name of W. B. Dunn, trustee, of the trust deed that was executed and recorded at about the time he purchased and paid for the property? So far as the records disclose, Mrs. Dunn was apparently the only person authorized, as the beneficiary in the trust deed, to discharge it, and as J. M. Dunn, her husband, was, as found by the court, fully authorized by her to transact business in her name, he had authority to discharge the trust deed as her agent. W. B. Dunn, the trustee, was simply named as such trustee for Mrs. Dunn, as beneficiary in the trust deed, or for the legal owner and holder of the promissory note it was given to secure, but he, in fact, had no knowledge of the trust deed. Mrs. Dunn, as beneficiary named in the trust deed, had the apparent right to discharge or release it without the consent of the trustee, and while such release, made after the transfer of the note to the plaintiff, was undoubtedly a breach of trust as to him, yet it did not affect Peebles, who had no notice or knowledge of such breach of trust. J. M. Dunn, then as the agent of Mrs. Dunn, being authorized to discharge the trust deed

or mortgage, so as to protect an innocent purchaser for value without notice, did the method adopted by him in discharging the same affect the defendant Peebles, or prevent the release operating as a discharge of plaintiff's lien upon the mortgaged property? We are of the opinion it did not.

Although not expressly authorized by W. B. Dunn to execute the release in his name, yet the discharge by J. M. Dunn cannot be said to be a forged release, because, being authorized to discharge or release the trust deed or mortgage by the apparent beneficiary, Mrs. Dunn, the form in which it was done was not important, so far as it affected an innocent purchaser for value without notice. If J. M. Dunn had executed the release in the name of W. B. Dunn, without authority from him or from Mrs. Dunn, a different question would have been presented. But, as suggested by the learned Judge in his decision, had the note not been transferred, Mrs. Dunn would have been bound by the discharge made by her agent in the manner it was made, and she could not have foreclosed the mortgage as against Peebles after the execution of the release. She would have been concluded and estopped by this deed of release. This being so, the plaintiff, not having taken and recorded an assignment of the trust deed, stands in no better position than would Mrs. Dunn, had she never transferred the note, as to Peebles, an innocent purchaser for value without actual notice of the transfer of the note secured by the trust deed. The plaintiff could have protected himself against any release by Mrs. Dunn, or her agent, J. M. Dunn, by taking the precaution to take and cause to be recorded an assignment, but, failing to do so, his lien upon the property is gone in favor of an innocent purchaser, Merrill v. Luce (S. D.) 61 N. W. 43; Merrill v. Hurley (S. D.) 62 N. W. 958. His neglect to take and record an assignment cannot prejudice the rights of an innocent purchaser. The plaintiff's equity by reason of his purchase of the Tomlinson note is no greater than that of Peebles, who purchased the property in good faith without notice of plaintiff's equity; and as the plaintiff, by his own neglect, has caused the de-:

fendant Peebles to advance his money upon the property, plaintiff cannot enforce the mortgage as against him.

The reason for such a rule is not only fully stated in the cases cited from our own court, but by the supreme court of the United States in Williams v. Jackson, 107 U. S. 478, 2 Sup. Ct. 814. In that case Mr. Justice GRAY, in delivering the opinion of the court, says: "The first deed of trust having been made to the trustees therein named for the benefit of Augustus Davis, and to secure the payment of the notes from the grantors to him; and the plaintiffs, upon the transfer and indorsement to them of those notes, having taken no precaution to obtain and put on record an assignment of his rights in such form as would be notice to all the world, the recorded deed of release, executed by him as well as by the trustees, reciting that the notes had been paid, and conveying the legal title, bound the plaintiffs, as well as himself, in favor of any one acting upon the faith of the record, and ignorant of the real state of facts. If the plaintiffs wished to affect subsequent purchasers with notice of their rights, they should have obtained a new conveyance or agreement, duly acknowledged and recorded, in the form either of a deed from the original grantors, or of a declaration of trust from the trustees, or of an assignment from Augustus Davis of his equitable interest in the land as security for the payment of the notes. The record not showing that any person other than Augustus Davis had any interest in the notes, or in the land as security for their payment, an innocent subsequent purchaser or incumbrancer had the right to assume that the trustees, in executing the release, had acted in accordance with their duty. * * * To charge Williams with constructive notice of the fact that the notes had not been paid, in the absence of any proof of knowledge, fraud, or gross or willful negligence, on his part, would be inconsistent with the purpose of the registry laws, with the settled principles of equity, and with the convenient transaction of business." In Livermore v. Maxwell (Iowa) 55 N. W. 37, the effect of a release, though in a somewhat different form, made by P. M. and J. M. Dunn, under a similar trust deed, was

considered by the court, and the conclusion arrived at that a subsequent purchaser in good faith for value and without notice took the land discharged of the lien, notwithstanding the court held the note in that case was negotiable. There was nothing appearing upon the face of the release, executed in the name of W. B. Dunn to Tomlinson, calculated to put Peebles upon inquiry, or that required time to make investigations as to authenticity the of the document, or the authority of the trustee to discharge the trust deed. Presumptions of constructive notice, as against *bona fide* purchasers for value without actual notice, are not favored by the courts. The rule governing such cases is thus stated by the supreme court of the United States, in Wilson v. Wall., 6 Wall 83: "A chancellor will not be astute to charge a constructive trust upon one who has acted honestly and paid a full and fair consideration without notice or knowledge. On this point we need only to refer to Sugden on Vendors, where he says; 'In Ware v. Lord Egmont the lord chancellor, Cranworth, expressed his entire concurrence in what on many occasions of late years, had fallen from judges of great eminence on the subject of constructive notice, namely, that it was highly inexpedient for courts of equity to extend the doctrine. When a person has not actual notice he ought not to be treated as if he had notice, unless the circumstances are such as enable the court to say, not only that he might have acquired, but also that he ought to have acquired it, but for his gross negligence in the conduct of the business in question. The question, then, when it is sought to affect a purchaser with constructive notice, is, not whether he had the means of obtaining, and might by prudent caution have obtained, the knowledge in question, but whether not obtaining was an act of gross or culpable negligence.'" It follows from these conclusions that the judgment of the court below should be affirmed, and the same is affirmed.