## No. 13,303.

### Denver Lumber and Manufacturing Company et al. *v.* Capitol Life Insurance Company.

(39 P. [2d] 1036)

Decided December 10, 1934. Rehearing denied January 7, 1935.

22

Mr. Victor A. Miller, for plaintiffs in error.

Mr. William E. Hutton, Mr. Bruce B. McCay, Mr. John F. Pierce, for defendant in error.

*In Department.*

Mr. Justice Hilliard delivered the opinion of the court.

A suit to foreclose a real estate mortgage. Plaintiff in suit, defendant in error, had judgment. The Denver Lumber and Manufacturing Company, one of the plaintiffs in error, owner of the land involved, gave the note and mortgage, and Louise K. Salzer and Benjamin F. Salzer, the other plaintiffs in error, were guarantors of the note. In the course of forming issues, and at the trial, many other contentions were advanced by the mortgagor and the Salzers, but here the errors said to obtain are comprehended in four assignments: (1) In the allowance of attorney fees to plaintiff; (2) in crediting sums paid to taxes rather than to the indebtedness proper; (3) in crediting other sums to insurance rather than to the formal indebtedness; (4) in appointing a receiver. The points are discussed in order.

1. The mortgage provided that in the event of foreclosure the mortgagee shall "recover a reasonable attorney's and solicitor's fee," the same to constitute a "further charge and lien upon said premises under this deed, to be paid out of the proceeds of the sale thereof." Plaintiff alleged the requisite facts and prayed for the allowance of an attorney's fee. The evidence was

that it had agreed to pay its attorneys, "as a reasonable fee for handling this case, whatever amount the court may fix as an attorney's fee."

Where either the note or securing instrument in a foreclosure proceeding provides for an attorney's fee, and the mortgagee employs counsel, a sum to that end, reasonably fixed by the court, may be included in the claim to be satisfied by sale. *Jones v. National Bank,* 74 Colo. 140, 219 Pac. 780. The provision amounts to an agreement that the mortgagee shall be indemnified against expense incurred in employing counsel to conduct the foreclosure. *Florence Co. v. Hiawatha Co.,* 55 Colo. 378, 135 Pac. 454. The trial court determined that the facts warranted the allowance of an attorney's fee and fixed the value of counsel's services in behalf of plaintiff at $2,000. Aside from the court's knowledge of the amount involved, roundly, $40,000, the character and extent of the defenses interposed, what the mortgagee's counsel had done, and the time devoted to the matter, the only evidence of the value of counsel's services came from witnesses for plaintiff. Their appraisement was in the sum fixed by the court. We think an allowance was in order, and, considering the record generally, and the forceful, determined and persistent opposition of defendants to the foreclosure, that the sum adjudged was within reasonable limitations. We are not disposed to the view advanced by counsel for the mortgagor that the contract of mortgagee with its counsel in the matter was inherently weak and vicious. The arrangement conformed to the spirit of our pronouncements that the sum to be allowed for counsel's services must be reasonable. *Jones v. National Bank, supra; Florence Co. v. Hiawatha Co., supra.* Only the court can determine that issue, and the agreement here was that the court should determine it.

We regard as unimportant the fact that one of the mortgagee's attorneys was a salaried employee. It does not appear that part of his engagement was to fore-

24

close mortgages, or, if so employed, that the salary would cover such service.

■ 2. That the tax problem may be comprehended, we note that the loan, $40,000, bearing six per cent interest, payable semiannually, was made May 19, 1926, to be paid, $6,000 May 19, 1927; $6,000 May 19, 1928; $6,000 May 19, 1929; $6,000 May 19, 1930, and $16,000 May 19, 1931; that other than as to the first interest payment, although payments on account were made as presently shall appear, default obtained throughout the period; that October 12, 1927, the mortgagor and guarantors were formally notified of the defaulted principal, $6,000, and one-half year's interest, $1,200, both due since May 19, 1927, and were given until October 21, 1927, to make payment, and to exhibit receipt for the payment of 1926 general taxes, failing which the mortgagee threatened to declare the entire principal due and institute foreclosure; that in response to the notice the mortgagor agreed to turn over to the mortgagee the rental of the property, $750 per month, to be applied, and declaration of default and foreclosure were forborne; that November 11, 1927, pursuant to the new arrangement, the mortgagor paid one month's rental, $750, and November 22, 1927, the general taxes on the property for 1926 remaining unpaid, and tax sale being imminent, the mortgagee paid the taxes, as by the mortgage it was privileged to do; that in making the tax payment the mortgagee mistakenly paid on a greater area than its mortgage covered, the error being due to the fact that a considerable plot, undivided, including the mortgaged premises, owned in entirety by the mortgagor, had been assessed as one property, and the mortgagee paid the entire bill.

It further appears that after the first so-called rental payment the mortgagor paid only in that manner, no heed being given to its definite obligation to pay interest twice yearly and annual amounts toward discharge of principal, and frequently the monthly rentals were withheld from the mortgagee; that at the final due date,

May 19, 1931, default obtained in a large sum, and October 17, 1931, foreclosure was begun, plaintiff claiming, besides interest, a principal balance of $34,404.54, and a tax payment made September 8, 1931, for 1930 assessment; that other than the tax item for 1926, paid in 1927, the claim for attorney's fee already disposed of, and an insurance item to be discussed later, the parties agreed on the sum for which judgment was given.

It is admitted that the mortgagor knew of the mortgagee's payment of its tax default for 1926, and it is clear that it also knew from the time thereof that the payment had been for the entire plot, being more than the mortgage covered; that with this knowledge, but requiring no particular manner of credit of the sums remitted, the mortgagor continued to make monthly payments as stated; that in April, 1928, it requested, and was given, a statement of the loan, the debits and credits being fully detailed, and among the debit items appeared the one for taxes; that not then, or at any time, until in the course of the trial, and then only by argument of counsel, did the mortgagor question the propriety or the amount of the tax payment.

Considering that some four years before the institution of foreclosure the mortgagor knew of the tax payment by the mortgagee; that three and a half years prior to suit it was formally apprised that to the extent required its monthly payments had been applied to the tax item, and that it voiced no protest until at trial, we think the trial court rightly resolved that at such late day the mortgagor should not be heard to say it had not recognized and paid in accordance with the account exhibited by the mortgagee. The situation is not to be likened to cases cited, where mortgagees had paid taxes on property not covered by their mortgages and sought to have foreclosure liens established for the unwarranted payments, for here, whatever the ordinary rule, in addition to the fact that no such relief was sought, the item had been eliminated through repayment by the mortgagor.

It is informative to add that no injustice resulted, for the mortgagor still owned the property and enjoyed full benefit of the payment.

3. The misunderstanding in relation to insurance grows out of the fact that certain of the rental money which the mortgagor paid to the mortgagee from time to time, as previously mentioned, instead of being credited to the indebtedness as such, was employed by the mortgagee in payment of defaulted premium on insurance carried on the mortgaged property, which had been assigned to the mortgagee as provided in the mortgage. It is not denied that the premiums were long past due, but the mortgagor insists, nevertheless, that since the policies had not been cancelled the mortgagee was not warranted in making payment of the premiums and charging the amount so paid to that account. The mortgage covenant required the mortgagor "To keep the buildings on the premises insured against loss by fire" and "In case of failure to keep and continue such insurance * * * the mortgagee may effect an insurance."

When we note the mortgagor's defaults as to the first installment of principal, the second interest payment, the taxes, the insurance, and the privilege it came early to enjoy to pay by the month, we cannot think the court adjudged unfairly when it allowed the charge the mortgagee had made for insurance. In the statement referred to in our discussion of the tax item, attention of the mortgagor was called to the long over-due insurance, and it was notified that unless it made payment reasonably soon, the bill "will have to be paid by the Capitol Life and charged to you." Ultimately, the premiums remaining unpaid, the mortgagee made payment and debited the mortgagor's account in accordance with the notice. As in relation to the tax charge, the mortgagor made no protest at the time. We think that however in other circumstances the insurance clause might be construed, the parties here may well be held to have interpreted it to mean that if the mortgagor did not pay the premiums

the mortgagee could do so, the payment to be taken into account in their adjustments. That was the effect of the trial court's holding.

4. On oral presentation counsel for the mortgagor stated that since the receivership had been without expense, he would not urge the assigned objection in the matter.

Let the order be that the judgment is affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.