KALEN, Appellant, v. GELDERMAN, et al, Respondents.

(278 N. W. 165.)

(File No. 8111. Opinion filed March 7, 1938.)

*Claude A. Hamilton,* of Sioux Falls, for Appellant.

*Theodore N. Feyder,* of Sioux Falls, for Respondents Theodore and Frieda Gelderman.

*Bielski, Elliott & McQuillen,* of Sioux Falls, for Respondents Albert S. Goss, Land Bank Commissioner, and Federal Farm Mortgage Corporation.

RUDOLPH, J. In February, 1930, Theodore Gelderman and his wife made and delivered to one Bork a negotiable promissory note in the sum of $4,900, which note was secured by a first mortgage upon certain land located in Minnehaha county, S. D. The mortgage was duly recorded in the office of register of deeds of Minnehaha county. In August, 1930, Bork for a valuable consideration transferred the note by indorsement and the mortgage by assignment to Jessie Langman. This assignment was placed on record. Jessie Langman transferred the note by indorsement, and assigned the mortgage to the Farmers State Bank of Rudd, Iowa, as security for indebtedness owed by Langman to the bank. The note was indorsed in blank. The assignment to the bank was not placed of record. Thereafter, and before the note was due, the Farmers State Bank of Rudd sold the note to the plaintiff and delivered the same to her, but did not indorse it. The bank also delivered to the plaintiff an assignment of the Gelderman mortgage, which assignment was not recorded.

We think it advisable to consider at this time the status of the plaintiff as a holder of this note. Section 1713, Rev. Code 1919, provides that an instrument is payable to bearer "when the only or last indorsement is an indorsement in blank." As disclosed by the above statement, the indorsement of Langman, which was the last indorsement on the note, was in blank, and under the above provision of our Code this note was thereafter to be considered as

being "payable to bearer." Section 1734, Rev. Code 1919, provides that an instrument payable to bearer is negotiable by delivery thereof. Section 1756, Rev. Code 1919, defines a holder in due course, as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"1. That it is complete and regular upon its face.

"2. That he became the holder of it before it was overdue, and without notice that it has been previously dishonored, if such was the fact.

"3. That he took it in good faith and for value.

"4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

We think it clear that the plaintiff is a holder in due course of this note. The note was negotiated to the plaintiff within the meaning of section 1734; at the time of negotiation it was not due, had not been dishonored, it was complete and regular upon its face, and plaintiff took it in good faith and for value without notice of any infirmity in the instrument or defect in the title of the person negotiating it. That the plaintiff is not a holder in due course of the principal note for which this Gelderman note is held as security does not affect the status of the plaintiff as a holder in due course of the Gelderman note. National Bank of Commerce v. Bottolfson, 55 S. D. 196, 225 N. W. 385, 69 A. L. R. 892. The amount due on the main obligation is without dispute in the record. It should be pointed out also that section 1753 refers to a note payable to order, as distinguished from a note payable to bearer, and the note involved in the case of Harris v. Esterbrook, 55 S. D. 538, 226 N. W. 751, 70 A. L. R. 241, wherein section 1753 was construed, was a note payable to order.

In 1933, Gelderman made an application for a loan from the defendant Land Bank Commissioner. For a statement of the facts concerning the manner in which this loan was negotiated and the manner in which the proceeds of the loan were paid, we set forth the trial court's findings of fact, Nos. 9 and 10:

"That at all times herein mentioned The Costello Company of Sioux Falls, South Dakota was engaged in the farm loan business

of which concern Tom Costello was the President and Managing Officer and as a part of their said business negotiated loans for applicants and secured such loans in various insurance companies and in the defendant Land Bank Commissioner; that in the late fall of 1933 the defendant Theodore Gelderman came to the office of The Costello Company in Sioux Falls, South Dakota, and talked with the said Tom Costello in regard to refinancing his indebtedness; that prior to January 1, 1934 and prior to any application for a loan having been made to defendant Land Bank Commissioner the said Tom Costello corresponded with various creditors of the said Theodore Gelderman including the defendant Jessie Langman for the purpose of negotiating settlements and compromises of his debts with them; that thereafter and on the 2nd day of February, 1934 an application for a loan to the said Theodore Gelderman by the defendant Land Bank Commissioner was first prepared by defendant Theodore Gelderman and Tom Costello and on February 23, 1934 forwarded to the Land Bank Commissioner at Omaha, Nebraska; that said application for a loan listed the defendant Jessie Langman as the holder of the mortgage given by the defendants Theodore Gelderman and Frieda Gelderman to August Bork hereinbefore referred to; and made application for a first mortgage loan on the premises involved in this action.

"That while said application for a loan was pending the said Theodore Gelderman and Tom Costello continued to have correspondence with Jessie Langman who was the owner of record of said mortgage and believed to be the true owner thereof concerning a compromise of the same; that after some negotiations between said parties, but in which the defendant Land Bank Commissioner took no part, it was agreed to compromise the same for the sum of $1600.00 and on the 25th day of April, 1934 the said Tom Costello wrote to the defendant Land Bank Commissioner and advised it that Jessie Langman would accept $1600.00 in full settlement of her mortgage upon the premises involved in this action; that on June 16, 1934 the Costello Company forwarded to the Land Bank Commissioner the written agreement of Jessie Langman to accept bonds of the Federal Farm Mortgage Corporation in said amount in satisfaction of her mortgage; that thereafter a first mortgage loan in the sum of $1800.00 was approved by the

defendant Land Bank Commissioner and notice thereof was sent to the Costello Company with instructions to furnish an abstract of title; that the Costello Company secured the abstract of title from the defendant Theodore Gelderman, had the same extended and forwarded to the defendant Land Bank Commissioner at Omaha, Nebraska; that said abstract was examined by the attorneys for the defendant Land Bank Commissioner and showed the title to the premises involved in this action to be in the said Theodore Gelderman free and clear of all encumbrances, except the mortgage hereinbefore referred to given to August Bork which the abstract of title, being a true abstract of the records in the office of the Register of Deeds of Minnehaha County, showed assigned to Jessie Langman and said Jessie Langman to be the owner and holder thereof; that said abstract was returned by the Land Bank Commissioner to The Costello Company, together with a note and mortgage to be executed by Theodore Gelderman and Frieda Gelderman, and the said Theodore Gelderman and Frieda Gelderman on or about the 11th day of July, 1934 as alleged in paragraph ten of the plaintiff's complaint executed and delivered to the Land Bank Commissioner their note secured by a mortgage upon the premises hereinbefore described in the amount of $1800.00 which mortgage was recorded in the office of the Register of Deeds of Minnehaha County, South Dakota on the 31st day of July, 1934 and recorded in book 210 of mortgages at page 404; that said note and mortgage are now owned by the defendant Federal Farm Mortgage Corporation as successor to the Land Bank Commissioner; that on or about the 16th day of August, 1934 said note, together with the recorded mortgage executed by the defendants Theodore Gelderman and Frieda Gelderman to the Land Bank Commissioner were, together with a continued abstract showing said mortgage, returned by the Costello Company to the defendant Land Bank Commissioner at Omaha; that said continued abstract was examined by the attorneys for the defendant Land Bank Commissioner at Omaha, Nebraska, and said mortgage executed by Theodore Gelderman and Frieda Gelderman to the Land Bank Commissioner was shown by the abstract which was a true and correct abstract of the records in the office of the Register of Deeds of Minnehaha County, South Dakota to be a first lien thereon except for the mortgage shown by the records to be owned by Jessie Langman;

that thereafter and on or about the 23rd day of August, 1934 remittance upon said loan consisting of check payable to the County Treasurer of Minnehaha County, South Dakota for $249.65, check payable to Theodore Gelderman for $15.75, order for bonds in favor of Mrs. Jessie Langman for $1512.25, check to Mrs. Jessie Langman in the sum of $8.10 was made by the defendant Federal Farm Mortgage Corporation and forwarded to the said The Costello Company; that said remittance was received by the said The Costello Company on or about the 25th day of August, 1934 and the said The Costello Company thereafter proceeded to disburse the proceeds thereof and on August 31, 1934 paid from the proceeds of said loan to the County Treasurer of Minnehaha County, South Dakota for delinquent taxes upon said premises the sum of $249.65 and on said date forwarded to the defendant Jessie Langman at Sherburne, New York an order for bonds of the defendant Federal Farm Mortgage Corporation in the sum of $1515.25, the said Jessie Langman having agreed to accept the balance remaining from the proceeds of an $1800.00 loan in full satisfaction of her said mortgage; that on or about the 26th day of September, 1934 there was received by the said The Costello Company from Jessie Langman a satisfaction of mortgage in regular form satisfying the mortgage recorded in the office of the Register of Deeds of Minnehaha County in book 198 of Mortgages on page 71 thereof which satisfaction of mortgage was recorded by the said The Costello Company in the office of the Register of Deeds of Minnehaha County, South Dakota on the 9th day of October, 1934 and recorded in book 209 of Mortgages at page 433 thereof and which satisfaction of mortgage was then by The Costello Company forwarded to the defendant Land Bank Commissioner at Omaha; that Exhibit '45' is said satisfaction; that on or about the 3rd day of October, 1934 The Costello Company first received a letter from Jessie Langman advising that she did not have the Theodore Gelderman note but representing that she was the owner thereof; that on the 9th day of October, 1934 The Costello Company, believing the representations of Jessie Langman, forwarded to the said Jessie Langman an affidavit to be signed by the said Jessie Langman setting forth that said note was lost; that an affidavit so stating was received by The Costello Company from Jessie Langman on or about the 22nd day of Octo-

ber, 1934; that said affidavit was then forwarded by The Costello Company to the defendant Theodore Gelderman but was never sent to the defendant Land Bank Commissioner; that Exhibit '44' is such affidavit and was believed by The Costello Company and Theodore Gelderman; that on or about the 11th day of October, 1934 and at a time subsequent to the payment of taxes and sending of the order for bonds to Jessie Langman and subsequent to the recording of the satisfaction of said mortgage the said The Costello Company wrote to the Land Bank Commissioner at Omaha advising them that Jessie Langman had not yet furnished said note and had been unable to locate same, but there was nothing in said correspondence to indicate that the said Jessie Langman was not the true owner thereof or that anyone else claimed any right, title or interest therein, and no such notice either actual or constructive was ever given until December, 1935; that on the 22nd day of October, 1934, the bonds were sent by the Federal Farm Mortgage Corporation to the Sherburne National Bank of Sherburne, New York for the benefit of Jessie Langman upon surrender of the order for bonds previously sent her by The Costello Company and on the 22nd day of October, 1934 the Costello Company mailed to Jessie Langman the check in the sum of $8.10."

The trial court held that the mortgage of the defendant Federal Farm Mortgage Corporation is a first lien upon the premises and that the mortgage of the plaintiff has been fully paid and satisfied. The plaintiff has appealed from the judgment and from an order denying her motion for a new trial.

From the findings of the court, above set out, it very clearly appears, we believe, that the defendant, Federal Farm Mortgage Corporation, was itself attempting to procure the settlement and satisfaction of the existing Bork mortgage as a condition precedent to the consummation of the loan. It might be that the Costello Company was the agent of the Geldermans in negotiating this loan from the defendant corporation, but there can be little doubt that the defendant Farm Mortgage Corporation relied upon the Costello Company as its agent in seeing to it that the prior Bork mortgage was settled and satisfied. However, apart from any activity of the Costello Company, the defendant company actively

participated in the payment and satisfaction of this Bork mortgage. It was advised of each step and proceeding in the payment of this mortgage, and then remitted the bonds in payment thereof direct to Langman in New York. It will be noted from the findings, above set out, that it was not until the 22d day of October, 1934, that the bonds in payment of this loan were remitted, and then they were sent by the defendant corporation to New York for the benefit of Jessie Langman. Prior to the time these bonds were sent, the defendant Land Bank Commissioner had been advised by the Costello Company that "Jessie Langman had not yet furnished such note and had been unable to locate same."

It is well established in this state that a negotiable note must be paid to the legal holder and owner at the time of such payment, and the payment to any other person not in possession thereof will not be binding upon the legal owner and holder unless he has either expressly or by implication authorized such other person to receive such payment for him. Balcom v. O'Brien, 13 S. D. 425, 83 N. W. 562; Astoria State Bank v. Markwood, 37 S. D. 56, 156 N. W. 583, reversed on rehearing 38 S. D. 437, 161 N. W. 815; Astoria State Bank v. Markwood, 41 S. D. 446, 171 N. W. 203. And in the early case of Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687, 689, this court, in a case involving somewhat similar set of facts to those here involved, said: "Of course, a person would not be justified in paying the amount due upon a written instrument to one who was neither an agent in fact nor an agent having ostensible authority to collect the amount due, unless such person had in his possession the instrument itself."

This statement was, of course, made with reference to a negotiable promissory note. Apart from our recording laws, and apart from the fact that this note in suit was secured by a mortgage, the facts upon which respondents rely as constituting payment would not be sufficient. It is clear from the findings of the court and stands undisputed in this record that at the time the payment of this note was made to Jessie Langman, the plaintiff was the legal owner and holder in due course of the note and was in possession thereof. The real question involved in this case, therefore, is the effect of our recording laws upon the transaction here involved, and whether the failure of the plaintiff to record her assignment of

this mortgage overcomes the well-established rule that a negotiable note must be paid to the legal holder and owner at the time of such payment. We consider the question first apart from certain South Dakota cases.

 It is established by the great weight of authority that, "in absence of statute to the contrary, the assignee of a mortgage securing a negotiable instrument need not record his assignment in order to invalidate payments made by the mortgagor or others to the mortgagee, even though the recording laws provide for the recordation of the assignments of mortgages; and in making payment the payor relies on the records at his peril." See 89 A. L. R. 193, and the cases there cited. In this state it is held that a mortgage is merely an incident of the debt it secures, and that a transfer of the debt secured by a mortgage carries with it the security. Barbour v. Finke, 47 S. D. 644, 201 N. W. 711, 40 A. L. R. 829. And under the provisions of section 1561, Rev. Code 1919, "the record of the assignment of the mortgage is not of itself notice to a mortgagor, his heirs, or personal representatives, so as to invalidate any payment made by them, or either of them, to the person holding such note, bond, or other instrument." This statute, we believe, contemplates payment to the owner and holder of the note as distinguished from the record holder of the assignment. In any event it was not intended to authorize the mortgagor to pay the mortgage note to one not the holder of the note. Williams v. Keyes, 90 Mich. 290, 51 N. W. 520, 30 Am. St. Rep. 438; Burhans v. Hutcheson, 25 Kan. 625, 37 Am. Rep. 274; Rodgers v. Peckham, 120 Cal. 238, 52 P. 483. That such is the rule in this state seems clear from the case of Richards Trust Company v. Rhomberg, 19 S. D. 595, 104 N. W. 268, 270, wherein the court said: "We are inclined to take the view that the appellant is right in her contention that, having purchased the note and mortgage with her name filled in as indorsee of the note and assignee of the mortgage, and having the note and mortgage in her actual possession * * * she was not required to record the assignment or give notice of the same in order to protect her interest therein."

 We are convinced that the recording acts have no effect upon the payment in so far as the Geldermans are concerned. The Geldermans relied upon the statements of Jessie Langman

that she had lost the note, and their reliance was misplaced. It was for them, under the well-established rule, to pay the note to the legal owner and holder at the time of such payment, and the payment to another person not in possession thereof is not binding upon this plaintiff unless plaintiff has either expressly or by implication authorized such other person to receive such payment for him. There is no contention here that the plaintiff expressly authorized Jessie Langman to receive this payment for her, and we find nothing in the facts from which such authorization might be implied.

We next consider the rights of the defendant Federal Farm Mortgage Corporation. It is further well established by authority, that "where a release or satisfaction of a mortgage has been entered of record by the original mortgagee, or the mortgage has been canceled, a subsequent purchaser or mortgagee for value and without notice of the assignment will be protected against the lien of a prior unrecorded assignment of mortgage." 89 A. L. R. 184, and cases cited; and such is the rule in South Dakota, Pickford v. Peebles, 7 S. D. 166, 63 N. W. 779. The question with which we are now concerned therefore is whether the Federal Farm Mortgage Corporation is a subsequent mortgagee for value and without notice of assignment within the rule above announced. We are convinced that it is not. From the facts as found by the court, it appears that the defendant corporation relied not upon what the record showed, but rather upon its own activities and those of its agent the Costello Company in being certain that all outstanding loans against this land were paid. This defendant actively participated in the paying of this mortgaged indebtedness in the manner in which it was paid, and we cannot determine that it stands in any different position than the Geldermans themselves. This defendant was advised by the Costello Company before sending the bonds to New York that the Costello Company had been unable to obtain the note which the bonds were to satisfy. The mortgage company clearly had within its power after receiving this information the right to refuse to send these bonds to Langman at New York until such time as this outstanding note was produced. It further appears that the company did not trust the Geldermans to make the payment to satisfy this mortgage but took upon itself the

responsibility of sending the bonds in payment of this loan direct to Langman in New York.

█ Under these circumstances, we are convinced that the equitable principle found in section 75, Rev. Code 1919, "Where one of two innocent persons must suffer by the act of a third, he by whose negligence it happened must be the sufferer," and which has been relied upon by this court in some of the South Dakota cases, has no application here. It appears to us that not only was this plaintiff negligent in failing to record her assignment, but equally negligent were the Geldermans and the defendant corporation in failing to require that the note be surrendered before paying the mortgaged indebtedness.

This brings us now to consideration of the South Dakota cases. We are convinced that none of these cases are controlling. The South Dakota case upon which respondent principally relies is the case of Pickford v. Peebles, supra. However, the facts in that case disclose that Peebles, the only answering defendant, purchased the mortgaged land relying upon a satisfaction of the mortgage made by the mortgagee and entered of record. Peebles had nothing to do with the payment or discharge of the mortgaged indebtedness, did not know that the mortgage note was not surrendered when the satisfaction was issued, but relied entirely upon the record, and was without question a subsequent purchaser for value without notice of the assignment. In the cases of Merrill v. Luce, 6 S. D. 354, 61 N. W. 43, 55 Am. St. Rep. 844; Barry v. Stover, 20 S. D. 459, 107 N. W. 672, 129 Am. St. Rep. 941; McVay v. Bridgman, 21 S. D. 374, 112 N. W. 1138, the notes involved were nonnegotiable notes, and payment was made to the mortgagee without notice of any assignment, either actual or constructive. A different rule than that announced herein applies where a note is nonnegotiable. "Payment of a nonnegotiable instrument to the assignor after the same has been transferred, whether before or after maturity, but before notice of the transfer, is binding." 8 C. J. 600. The case of Reid v. Kellogg, 8 S. D. 596, 67 N. W. 687, 689, involved a state of facts where the court held that the mortgagee was authorized by the assignee to receive payment of the mortgage. The court in that case said: "From all of the facts and circumstances in this case the jury could properly

draw the inference and arrive at the conclusion that the defendant had, by the course of dealing with the note and mortgage, caused Reid [mortgagor] to believe the bank had at least ostensible authority to receive this money." The case of Merrill v. Hurley, 6 S. D. 592, 62 N. W. 958, 962, 55 Am. St. Rep. 859, seems to us to be authority in this state for the result we have reached in this case, at least so far as the Geldermans are concerned. In this case defendant Hurley and his wife executed an instrument which the court held to be a mortgage to secure a negotiable promissory note in the sum of $600, payable to the American Mortgage & Investment Company, which mortgage was duly recorded. This company indorsed the note to the plaintiff, Merrill, but no assignment of the mortgage was placed on record. Hurley apparently never received the money evidenced by this note, and subsequently the company released the mortgage on the record and executed a bond in the sum of $1,000 conditioned that they would cause to be returned to Hurley the $600 note in question. In that case the court said: "When the mortgaged premises were conveyed by the trustee, the defendant Hurley was evidently aware that the trust deed and note had been placed beyond the control of the mortgagee and trustee, as the bond, in which it was agreed that the property should be reconveyed by the trustee to Hurley, expressly recites that the defendants were unable to cancel or redeliver the note secured by the mortgage, and, in consideration of a discontinuance of his suit to obtain a cancellation thereof, this indemnifying bond was executed by the defendant mortgage company and by E. H. Jacobs, trustee; and thereupon the defendant Hurley dismissed his suit, brought to regain possession of the note and cancellation of the mortgage, and took the bond executed for $1,000 by such mortgagee and trustee, conditioned that they would indemnify and save him harmless against loss or damage that he might sustain by reason of said lien upon his property; and it is reasonable to presume that he knew, or at least under the circumstances ought to have known, that the note had been negotiated or placed in the hands of some one who would attempt to enforce its collection, and that he elected to rely upon the bond executed for his protection."

The facts in this present case disclose that, prior to the time

the bonds were sent to Langman, she was required to execute an instrument wherein she agreed "to hold Theodore Gelderman harmless in the event that this note should get into the hands of any other person." As Hurley "elected to rely upon the bond executed for his protection" in the case of Merrill v. Hurley, supra, so, we believe, the Geldermans elected to rely upon the agreement of Langman to hold them "harmless in the event that this note should get into the hands of any other person." We are satisfied that both the Geldermans and the defendant Federal Farm Mortgage Corporation had it within their power to obviate the situation in which they now find themselves by the simple expedient of following the well-established rule that payment of a negotiable instrument must be made to the owner and holder thereof at the time the payment is made.

Having failed to follow this well-established rule and having turned over the bonds to Langman after being advised that the note was not then in her possession, we are convinced that the judgment and order appealed from must be reversed.

All the Judges concur.