No. 20636.

Jean Reese, Mert Reese, and Jane Matheson *v.* E. J.
Lietzan, as Administrator of the Estate of E. L.
Huntsman, original Defendant in Error, Deceased.
(419 P.2d 959)

Decided July 18, 1966.     Rehearing denied November 28, 1966.

C. Mert Reese, Arthur W. Zarlengo, for plaintiffs in error.

John J. Vandemoer, for substituted defendant in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Jean Reese, C. Mert Reese and Jane Matheson suffered an adverse judgment in a suit to recover the principal, interest and attorney's fees alleged to be owing on a promissory note executed by them. They will hereinafter be referred to collectively as the "makers," or individually by name.

The note's payees were designated as "E. L. Huntsman

or Jessie M. Huntsman," but only E. L. Huntsman brought suit. Jessie M. Huntsman, his wife, was later made an additional defendant on the theory that she would be liable to E. L. if the makers were not.

Upon trial, Jessie was dismissed from the action. E. L. prevailed as against the makers, in the manner hereinafter narrated. The makers would now have us reverse by writ of error.

The note literatim is as follows:

"$3191.80                    Calhan, Colo. Jan. 19, 1957
Six months after date, for value received,

I or we promise to pay to E. L. Huntsman or Jessie M. Huntsman or order the sum of thirty one hundred ninety one and 80/100 Dollars at Farmers State Bank of Calhan with interest at the rate of 7 per centum per annum until paid. Interest payable at maturity.

And a failure to pay any of said interest when due shall cause the whole note to become due and collectible at once or the interest to be counted as principal at the option of the holder of the note————————further agree to pay fifteen per cent. as Attorney's fee in case suit is brought on this note, said fee to be taxed up as part of the cost of suit.

Due July 19, 1957                    Jean Reese
2196 Lamar St.                       C. Mert Reese
Denver, Colo.                        Jane Matheson"

As accurately as may be determined from an unclear record, the chronology of the transaction in question is roughly as follows. The makers' note was executed in the amount of $3,191.80 on January 19, 1957 and fell due July 19, 1957. No payment on the note was made until August 10, 1957 when $474.64 of principal, and interest to that date of $125.36, was remitted. A suit to recover the remaining principal ($2,717.17) and interest ($269.45) owing was commenced on June 9, 1958.

At some undetermined time before this last development, but after the note's execution, two events important to this controversy transpired. First, the note was

put up as security with the Farmers State Bank of Calhan, Colorado for credit extended to E. L. Although the evidence is conflicting, the trial court found that Jessie without apparent restriction endorsed the note either before or during the bank's possession of it. Second, Jessie separated from her husband.

Again, at some undetermined time, but after the Huntsmans' separation, the Farmers State Bank attempted to collect the note in its possession without success. E. L. then paid his own obligation to the bank and the note executed by the makers was returned to him.

After suit was commenced by E. L. but before answer was filed, the Reeses, on January 5, 1959, drew two checks, each for half the amount claimed owing, namely, the sum of $1,493.31. One check, that made out to E. L., was certified. The other, not certified, was drawn to the order of Jessie. Both drafts were sent to E. L., who applied the certified check to the balance owing and returned the uncertified check to the Reeses. They, in turn, gave this latter check to Jessie, and on January 10, 1959 she executed a release in favor of the makers.

Sometime during the summer of 1959 Jessie went to live with the Reeses. While there, on September 5, 1960, she executed a second release for $10 and "past considerations," whereupon she returned to the makers her uncertified check.

The makers of the note responded to E. L.'s complaint of June 9, 1958 on June 25, 1958 by filing a motion to dismiss. This motion the court denied. They then proceeded to file an answer on July 5, 1960, raising as defenses the first of Jessie's releases and the tendered but refused uncertified check. By supplemental answer, filed October 13, 1960, the second release was set up as a defense. On December 8, 1960 E. L. filed an "Additional Party Defendant Complaint," pursuant to pretrial order of the court, joining Jessie as a defendant in the action on the theory that, should the makers be found not liable on the note, she would be.

The monies loaned to the makers were the joint property of the Huntsmans, earned by their combined ranching efforts. The note itself appears always to have been in the possession of E. L. or the bank, with the sole exception of Jessie's possession for the purpose of affixing her endorsement.

Death having overtaken the pace of the present litigation, E. J. Lietzan has been substituted as Administrator of the Estate of E. L. Huntsman, now deceased.

Initially, we must consider the nature of the note. The makers and Jessie contend that, as drawn, it created joint payees; E. L. maintains that the note created alternative payees. Upon these characterizations hinge the force and effect of the releases executed by Jessie, for, if joint, the releases were good, but if alternative, they were not.

The Negotiable Instruments Law, C.R.S. '53, 95-1-8, provides that a negotiable instrument "may be drawn payable to the order of:

\* \* \*

"(4) Two or more payees jointly; or

"(5) One or some of several payees;

\* \* \*"

Numerous cases may be cited for the proposition that a promissory note drawn to the order of "A or B" creates alternative and not joint payees, *Union Bank of Bridgewater v. Spies*, 151 Iowa 178, 130 N.W. 928; *Voris v. Schoonover*, 91 Kan. 530, 138 Pac. 607, 50 L.R.A.N.S. 1097; Annot., 171 A.L.R. 522, and cases therein collected, and we are not disposed to deviate from this all but universal construction. It should be observed that, although this was an intra-family transaction, the vehicle chosen to consummate it was a formal commercial document. This being the case, we are bound to apply the rules of law applicable to such notes in the light of the certainty of construction that commercial dealings require.

It appears, therefore, from the face of the note in question that the form falls within subsection (5) of

C.R.S. '53, 95-1-8. While there are a small number of cases in which the disjunctive "or" has been construed as the conjunctive "and" so as to create a joint rather than an alternative interest, unique and exceptional circumstances have always accompanied the result. We make no judgment as to these decisions but limit ourselves to the observation that none of the factors that apparently lead to such results appears in the case at issue. See, *e.g., Houle v. McMillan,* 83 Colo. 216, 263 Pac. 409; Annot., 171 A.L.R. 528-533.

■ Being a note drawn to alternative, not joint, payees, it follows that it could be discharged only by a holder of the instrument. C.R.S. '53, 95-1-51, 95-1-74, 95-1-122; *Townsend Trust v. Reynolds,* 35 Del. 298, 165 Atl. 154; *Glens Falls Indemnity Co. v. Chase National Bank,* 257 N.Y. 441, 178 N.E. 751; *Kalen v. Gelderman,* 66 S.D. 53, 278 N.W. 171.

■■ E. L. was at the least a holder of the note, C.R.S. '53, 95-1-58. We need not address ourselves to whether in addition to being a holder he was a holder in due course, for we have before us no "real" defenses being pressed by the makers against the holder of the instrument. The makers engaged, under C.R.S. '53, 95-1-60, to pay the note according to its tenor upon its falling due, and, as noted above, they must pay the holder. They knew full well who the holder was, but chose instead to attempt what they considered an equitable distribution of the principal in the light of a family squabble. Tender of a check to E. L. which was drawn payable to Jessie, while it indicates that the makers knew they had to pay the holder, did not constitute payment to him, for, being the holder of the note, E. L. was entitled to its proceeds but he could not, however, have realized payment upon Jessie's check.

■ The equities that may exist between payees governing the division of funds paid pursuant to a commercial promissory note are none of the makers' concern. They must simply pay the note according to its

tenor to the holder at maturity, and here they have not done so. We conclude, therefore, that Jessie, not being the holder of the note, had no power to discharge it, and the purported releases executed by her were without effect.

■ One final matter remains to be considered. It is claimed that the 15% attorney's fee provided for by the terms of the note was improperly awarded by the trial court because, although the amount was shown to be reasonable, there was no proof that attorney's fees had actually been paid or incurred. Proof that attorney's fees have actually been paid or incurred is a material matter to be proven in this state, because recompense is justified only as indemnity to the note holder. Absent proof of payment or obligation, there is nothing to indemnify, and hence there can be no recovery. *Rock Wool Insulating Company v. Huston*, 141 Colo. 13, 346 P.2d 576; *Denver Lumber and Mfg. Co. v. Capitol Life Ins. Co.*, 96 Colo. 21, 39 P.2d 1036; *Jones v. First National Bank of Fort Collins*, 74 Colo. 140, 219 Pac. 780; *Florence Oil & Refining Co. v. Hiawatha Gas, Oil & Refining Co.*, 55 Colo. 78, 135 Pac. 454.

■ In the present case, although the proof was slight, plaintiffs' counsel did testify that "the fees . . . will be claimed . . . ." From this, the trial court could have found, as it did, that the fees were "incurred," and we will not replace the court's judgment in this matter with our own.

The judgment is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE McWILLIAMS not participating.