MAY McCANN, APPELLEE, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLANT.

FILED JANUARY 10, 1929. No. 26217.

*John L. Webster* and *R. B. Hasselquist,* for appellant.

*Smith, Schall, Howell & Sheehan, contra.*

Heard before GOSS, C. J., ROSE, GOOD, THOMPSON and EBERLY, JJ., and REDICK, District Judge.

REDICK, District Judge.

This action is brought for damages for personal injury to plaintiff while a passenger on one of the street cars of defendant. The petition alleges that about 10 o'clock a. m., on April 21, 1926, the plaintiff was a passenger on defendant's car, and, desiring to alight at Sixteenth and Farnam streets, she signaled the car to stop and arose from her seat and proceeded toward the front exit, and, while in the exercise of due care on her part, defendant negligently stopped said car with a violent, sudden, unnecessary and unusual stop, in consequence of which plaintiff was thrown against the rear of the motorman's vestibule and to the floor of the car, whereby she was injured. The answer was a general denial. Case tried to a jury, which rendered a verdict of $11,050 for the plaintiff. Motion of defendant for new trial was overruled upon condition that plaintiff remit from the verdict the sum of $4,050, leaving it stand for $7,000. Plaintiff filed remittitur, and judgment rendered for plaintiff as ordered; to which order plaintiff and defendant each excepted. Defendant appealed to this court and plaintiff filed a cross-appeal.

Defendant presents seven assignments of error, the first two of which may be considered together.

Having shown that the plaintiff, Mrs. McCann, and a witness, Mrs. Wilbur, had been riding upon the street cars for many years in the city of Omaha, Mrs. McCann. was asked whether she had ever known of or observed the car to stop as suddenly and abruptly as the car did when she was injured, to which she answered, "I never have." Substantially the same question was asked Mrs. Wilbur, a passenger on the car, and she answered, "At one other time, I remember." Question: "Where was it?" Answer:

"At the Boulevard and Cuming street" (a distant part of the city). Defendant contends that it was of no concern to the jury whether plaintiff ever observed a street car to stop as suddenly and abruptly "at any other time or any other place;" that the only question was whether there was a negligent stopping at the time and place of this particular accident. True, but it was not the purpose of the questions to show that negligent stops had been made at other times, but to show the character of stops in general for the purpose of proving that the instant stop was of a different character,—unusual and more violent. We think the evidence was competent for that purpose. The answer of Mrs. Wilbur that she had seen one other such stop was immaterial and would have been incompetent, if offered for the purpose of affording an inference of a negligent stop at the time in question from the fact of a previous negligent stop; but that was not the purpose. The witness could not truthfully answer the question in the negative without the qualification. The question, "Where was it?" was immaterial, and the objection to it should have been sustained, but we think the error was without prejudice. If the witness had answered the question, "Only on one other occasion," her evidence, so far as material, would have been substantially the same. Defendant did not move to strike the answer, and we think no prejudice resulted. The suggestion that it would have been equally competent to call an unlimited number of witnesses to testify to sudden and violent stops at other times and places, while correct as a general proposition, is inapplicable here because not attempted.

The third assignment has to do with the testimony of witness Goodrich. Having shown that the witness had been a motorman for the defendant company for about six years, some time prior to the accident, on other lines of defendant, upon which the grades of the streets were as steep or steeper than that on Farnam street approaching Sixteenth, he was asked to describe the usual manner of bringing a street car to a stop on the west side of Sixteenth

and Farnam, to which he answered: "If you had gradually applied your air and as you came to a stop you gradually released it to keep it from coming to a sudden stop." And in reply to the question, "What would be the probabilities as to whether or not that would bring that car to a sudden stop?" he answered, "That is, if you applied it and did not release it fast enough it would bring it to a sudden stop because your wheels would be locked." The argument here is that the witness never operated a car at the place of the accident, did not see it, and had no personal knowledge whether the street car was stopped with a sudden jerk; and it is therefore suggested that his testimony was conjectural and speculative. We think not. The purpose of the testimony was merely to show the usual manner of stopping cars whereby a smooth stop could be accomplished. The evidence had its application to the point in question as well as any other place on defendant's line, and was proper for the purpose of aiding the jury in determining whether or not the proper methods had been used in making the stop complained of.

Motorman Johnson, in charge of the car at the time of the accident, described the manner of stopping the car precisely, and, almost in the same language, identically with the witness Goodrich, and said he used that method and made a smooth stop without any violent jerk or lurch. Defendant contends that, inasmuch as the motorman testified that he used the method described by Goodrich, he was not guilty of negligence in stopping the street car. This takes for granted that the motorman's evidence was true, but this was a question for the jury upon all the evidence and circumstances. The evidence of Goodrich was competent.

The fourth assignment is the overruling of defendant's motion for a directed verdict, made at the close of all the evidence. The evidence of plaintiff and Mrs. Wilbur was to the effect that the stop in question was unusually violent. The defendant produced the motorman and con-

ductor and one passenger who testified that there was nothing unusual about the character of the stop, and another passenger that it stopped in the regular way so far as he knew, that he did not pay any attention to it. These witnesses for defendant also testified that they were not thrown by the stop; but the passengers were seated and the conductor at his usual place in the rear vestibule, and therefore not in position to be affected by a sudden stop. So far as there is a conflict in this testimony, we think it was a question for the jury, and that the court did not err in overruling defendant's motion. Defendant's principal contention on this point is that it is insufficient for the plaintiff merely to show that her injuries resulted from a jerk or lurch of the car, but that she must go further and trace the jerk to some negligent act of defendant; that the doctrine of *res ipsa loquitur* has no application, the mere happening of the accident not furnishing any inference of negligence. In support of the proposition he cites a number of cases, which we have examined, but they all presented the situation where nothing but a jerk or lurch, followed by injury to the plaintiff, was shown. Two of those cases call attention to the fact that no evidence was offered tending to prove that the jerk or lurch of the car was any greater than usual. *Ottinger v. Detroit United Railway*, 166 Mich. 106; *Faul v. North Jersey Street R. Co.*, 70 N. J. Law, 795, citing from *Burr v. Pennsylvania R. Co.*, 35 Vroom (N. J.) 30: "It was not until extraordinary lurching and violence was shown that negligence could be presumed." This distinguishes the cases cited from the present one where evidence was produced tending to prove the stop unusually violent.

In this connection defendant places considerable stress upon the testimony of the motorman Johnson of admissions by plaintiff: "Q. Did you have any other conversation? A. I asked her if she fell down while the car was in motion or when it stopped, and she didn't know; she said, 'I tripped myself stepping down to the floor.' She said, 'I must have tripped myself stepping down.' Q. Why did you

ask her that question? Did you expect that anybody had fallen when that car stopped? A. No. I even asked her if it was any fault of the car, and she said, 'No; she didn't think so.'" This was denied by plaintiff. Defendant argues that this proves that plaintiff's fall was not the fault of defendant, but in our judgment it only went to the weight of plaintiff's testimony, which was for the jury.

It is further argued that, where plaintiff's injuries may have been due to other causes than carrier's negligence, the fact of the accident does not authorize the inference of negligence, which must be drawn, not from the fact of injury, but from the circumstances under which it occurred. Assuming this to be a correct statement, it was for the jury to determine whether plaintiff received her injuries by tripping or in consequence of a negligent stop. If the jury were unable to determine between the two possible causes, they should, of course, find for defendant; but the evidence was sufficient to support a finding that the car was stopped with extraordinary violence.

The fifth assignment deals with the order of the court for a remittitur from the verdict, it being contended that the verdict was so excessive as to indicate passion and prejudice on the part of the jury, and that therefore the entire verdict should have been set aside and a new trial granted. It seems to be the general rule that a verdict of the character supposed cannot be corrected by remittitur, but should be set aside *in toto*. In this case the learned district court incorporated in his order a finding that in his judgment the verdict was not based upon passion and prejudice of the jury, but that it was clearly excessive to the extent named. In such case defendant, and plaintiff on her cross-appeal, contend that the court had no authority to reduce the verdict in this class of cases where no definite or specific rule exists for the assessment of damages; that it invades the province of the jury, and the court has no measure for determining the extent of the excess. No doubt many cases so hold, though the authorities seem to be quite

divided on the point. See New Trial, 15 Decennial Dig. sec. 162(3). The rule in this state will be discussed later. But the error, if any, on this particular point was favorable to defendant and under familiar rules was not prejudicial. So held in a case involving a remittitur. *Schroeder v. Mauzy*, 16 Cal. App. 443.

The sixth assignment attacks instruction No. 3 as authorizing the jury to find for the plaintiff regardless of any negligence on her part. This assignment was not argued, but is not well taken because there was no pleading of contributory negligence.

The last assignment is that the verdict, both before and after remittitur, is excessive and of itself indicates bias and prejudice of the jury. To recite in detail the evidence as to the injuries suffered by plaintiff would unduly prolong this opinion. It appears, however, according to her evidence, that she suffered a fracture of the left femur in the upper third thereof, which the surgeons experienced great difficulty in reducing, which was attempted without operation for about six weeks when, failing to secure proper apposition, a portion of the shin bone was taken from the right leg and inserted at the point of fracture, the final result being a very good bony union; her leg was placed in a cast and so remained for about nine weeks; she was confined to the hospital for over three months, could not sleep, had pain all over her body, lost 31 pounds in weight, and expended about $1,100 for doctors and hospital fees; that she still required the aid of crutches at the time of the trial, about a year after the accident, and experienced great difficulty in getting up and down stairs; that she had been keeping a boarding-house, doing all the work herself, and earning $100 a month net; that she was 54 years old, and had an expectancy of 18 years; that she is unable to carry on her business without assistance of her daughter and some hired help, her daughter having theretofore earned her own living; that she still suffers considerable pain when walking. It was shown by defendant that plaintiff has Paget's disease, a progressive deterioration of the

bone structure, which existed prior to the accident, but it is not shown to have been the cause thereof nor result of the same, though probably contributing in some degree to plaintiff's continued disability. While the amount fixed by the jury seems quite liberal, we have examined with care the evidence regarding plaintiff's injuries, including that of six or more doctors and surgeons, and are unable to conclude that it clearly appears that the verdict was the result of passion and prejudice, but concur in the finding of the district court on that point.

As permitted by the statute, plaintiff has filed a cross-appeal, and insists that the order of remittitur be set aside and judgment ordered for the full amount of the verdict, on the ground that the court had no authority to order a remittitur where the verdict is not so disproportionate as to disclose passion and prejudice, and cites *Bower v. Chicago & N. W. R. Co.*, 96 Neb. 419, where the court held that the amount of the verdict was not so excessive as to call for a reversal of the judgment or to warrant any reduction by this court. The authority of the court to order a remittitur was not involved. Also *Dailey v. Sovereign Camp, W. O. W.*, 106 Neb. 767, in which it was said: "The law gives to the jury the right to determine the amount of recovery in cases of personal injury. That is, of course, one of its functions, and, if the verdict is not so disproportionate to the injury as to disclose prejudice and passion, it will not be disturbed." A remittitur, however, of $10,000 from a verdict of $50,931 was ordered by this court without a finding of passion or prejudice. These cases are not controlling. The general rule, as quoted from *Dailey v. Sovereign Camp, W. O. W., supra,* has been stated in 17 C. J. 1087, sec. 397, but as above noted the cases are in conflict. Whatever the rule may be in other jurisdictions, this court has recognized the power of the district court to require a reduction of the verdict as a condition for overruling a motion for new trial in a number of cases, and in *Chicago, B. & Q. R. Co. v. Krayenbuhl*, 70 Neb. 766, it was expressly held: "In an action for personal injuries,

where substantial damages are proved, but the verdict of the jury appears to be excessive, the error may be corrected by ∩ proper remittitur of the excess directed by the district court, or by this court on a proceeding in error." The power has been exercised by this court in many cases, *e. g., Mullally v. Haslam,* 106 Neb. 860; *Curran v. Union Stock Yards Co.,* 111 Neb. 251; *Morris v. Hines,* 107 Neb. 788; *Swartz v. Drake Realty Construction Co.,* 109 Neb. 746. While this court has approved the rule that, where the verdict is based upon passion and prejudice, a remittitur will not cure it, but a new trial should be granted (*Hoffman v. Chicago & N. W. R. Co.,* 91 Neb. 783; *Phelps v. Bergers,* 92 Neb. 851; *Hutchinson v. Western Bridge & Construction* Co., 97 Neb. 439), the rule seems equally well established that, where the verdict is *merely* excessive, a remittitur is proper. It seems consonant with reason that where there is a clear liability, or where liability is fairly established by the evidence, and passion and prejudice is not shown, but it appears to the court that the verdict is excessive by reason of the jury having taken a mistaken view of the evidence, or proceeded under an erroneous theory, or for any reason other than that denounced by statute, it should have the power to order a reasonable reduction in the interest of ending litigation. *Welsh v. Tri-City R. Co.,* 148 Ia, 200; 17 C. J. 1087, sec. 397.

Plaintiff's counsel claim that the amount allowed by the jury would not more than cover the loss of plaintiff on account only of her inability to carry on her business, without considering pain and suffering, assuming her disability of 75 per cent. in the use of the injured leg. We have not tested the accuracy of plaintiff's figures, but they assume that 75 per cent. disability of the leg creates the same percentage of disability in the business of keeping a boarding house, which seems unwarranted. Also, it appears that the plaintiff is still engaged in that business, but with what financial success is not shown. They further assume that plaintiff, but for the accident, would have been able every year up to the age of 72 to realize the same profit;

also, that plaintiff, though afflicted with an incurable disease, would live out her expectancy. While the reduction of the verdict by one-third seems liberal on the face of the figures, we are unwilling to hold that the trial judge abused his discretion, especially as he was in a better position than a reviewing court to judge the matter. *McCherry v. Snare & Triest Co.*, 130 App. Div. (N. Y.) 241; *McNulta v. Hendele*, 92 Ill. App. 273.

Plaintiff's cross-appeal is dismissed, and the judgment of the district court in all things

AFFIRMED.