ROBERT D. BARBOUR, APPELLEE, v. JENSON
COMMERCIAL DISTRIBUTING CO., A CORPORATION,
APPELLANT.
323 N.W.2d 824

Filed August 20, 1982. No. 44340.

James B. Cavanagh of Erickson, Sederstrom,

Leigh, Eisenstatt, Johnson, Kinnamon, Koukol & Fortune, P.C., for appellant.

William Jay Riley of Fitzgerald, Brown, Leahy, Strom, Schorr & Barmettler, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.

McCOWN, J.

This is an action to recover compensation alleged-ly due under an employment contract. The jury re-turned a verdict in favor of the plaintiff in the amount of $29,346.78. The trial court ordered a remittitur of $6,581.18, and entered judgment in favor of the plaintiff for $22,765.60, plus an attorney fee of $7,550. The defendant has appealed.

The plaintiff is a salesman who had worked for various employers for many years. The defendant is a Nebraska corporation engaged in the business of selling Maytag commercial appliances, laundry equipment, and other products. Harold Jenson is president of the defendant corporation.

The plaintiff and Jenson met in February 1971 and entered into an oral employment agreement. Ac-cording to plaintiff's testimony, he was to receive $500 per month flat salary, plus a 5 percent commis-sion on all sales. Jenson denied that he agreed to pay a 5 percent commission and testified that the agreement reached was reflected in a written con-tract dated March 1, 1971.

When plaintiff arrived at defendant's offices for work on March 1, 1971, he was asked to sign a writ-ten contract which had been drafted by company at-torneys. The contract provided for a guarantee of $500 per month, to be an advance against earned commissions or bonus each month. It provided for a 4 percent commission on commercial appliances sold at list prices, and lesser commissions on certain other sales. The contract also provided for an over-

riding bonus commission of 1 percent on all products sold during the term of the contract if plaintiff was in the company's employ on the date of expiration of the contract, which covered the period of March 1, 1971, to December 31, 1971.

Plaintiff told the bookkeeper who presented the contract to him that it was not the contract agreed upon between him and Jenson in February. Plaintiff testified that he signed the contract, however, to obtain a copy of it, and so that the bookkeeper could complete plaintiff's employment paperwork. Jenson was not in the office that day and plaintiff left the office and began to look for another job.

Plaintiff testified that a few days later, after a telephone call from Jenson, he and Jenson reached an agreement for a revised contract. According to plaintiff's testimony, he was to receive $500 per month guaranteed salary, plus a 5 percent commission on all sales. Four percent of the commission was to be paid monthly and 1 percent was to be deferred until the end of the year. Plaintiff would have the option to accumulate the 1 percent deferred commission. No interest was to be paid on the accumulated amounts, and the deferral was to be handled in a salesman's escrow account.

On March 8, 1971, the plaintiff wrote and mailed a certified letter to Jenson and to the employment agency through which the employment contact had originally been made, setting out the various facts and terms of the employment contract agreed upon. Jenson's testimony was that plaintiff never complained about the terms of the March 1 written contract, but that 2 or 3 weeks after plaintiff began work Jenson changed the terms of the written contract and agreed to pay a straight 4 percent commission on all sales and a straight salary of $500 per month rather than an advance against commissions. Jenson testified that the plaintiff did not object to those terms.

Plaintiff began working for defendant in March 1971 and continued to work for the defendant until July 1979. He was paid a 4 percent commission on all sales, except for special transactions, and he received a salary and a monthly expense sum. Commissions were paid only after the defendant received payment from the customer. Plaintiff was never paid an additional 1 percent. Over the years he received occasional raises in salary and expense payments. The plaintiff testified that each year he prepared reports of his sales for the year and met with Jenson, and that at almost every meeting the deferred 1 percent commission was discussed, and Jenson always indicated that it was available. Jenson denied that the 1 percent deferred commission was discussed.

In November 1978 plaintiff notified defendant's bookkeeper that he planned to withdraw his deferred commission at the end of the year and supplied the bookkeeper with copies of the March 1, 1971, written contract and the March 8, 1971, letter. At a meeting in December 1978 Jenson denied plaintiff's right to any deferred commission and denied that the March 8, 1971, letter stated the agreement. Plaintiff continued to work for defendant until July 3, 1979. Jenson terminated plaintiff's employment by letter dated July 10, 1979.

The case was submitted to the jury under instructions which are not objected to, and the jury returned a verdict for the plaintiff in the sum of $29,346.78. The court found that the verdict should be decreased in the amount of $6,581.18 to conform with the evidence and ordered a remittitur in that amount. Plaintiff, preserving his right under Neb. Rev. Stat. § 25-1929 (Reissue 1979), accepted the remittitur. The District Court then entered judgment in favor of the plaintiff in the sum of $22,765.60, together with an attorney fee of $7,550, plus costs. Defendant has appealed.

The defendant contends that the verdict of the jury is manifestly excessive and clearly wrong, and that a new trial must be awarded when the damages are excessive. Defendant argues that it is clear that the jury either ignored the judge's instructions or disregarded the evidence and there is no way to ascertain the basis of the jury verdict.

The law is well established that where a verdict is excessive, but not so much as to indicate passion or prejudice on the part of the jury, the error may be corrected by remittitur, if the excess can be estimated with reasonable certainty. *Hays v. County of Douglas,* 192 Neb. 580, 223 N.W.2d 143 (1974).

The record in the case at bar establishes without serious dispute that the jury intended to find for the plaintiff on all essential issues supported by the evidence. In view of the jury's inquiry about costs, there is a strong inference that the excess amount of the verdict represented attorney fees and costs when the verdict was $7,000 more than the amount requested by plaintiff and roughly one-third of that amount. Plaintiff's counsel, in final argument, requested the jury to bring in a verdict of $22,436.78. That amount, however, mistakenly omitted one item of $323, which would have made a total of $22,759.78, a sum within $5.82 of the amount ordered by the trial court's remittitur. The discrepancy between plaintiff's records of 1 percent of total sales and defendant's records of the same sales for the entire period of 1971 through 1979 was $328.82, which, in turn, accounts for the $5.82 difference. The evidence in the present case, using the defendant's own business records as to the total amount of sales, sustains the exact amount of the remitted verdict.

Generally, where the damages awarded are greater than the amount claimed in the declaration, or, from the facts disclosed by the evidence, are clearly excessive, and the illegal portion is distinguishable from the legal, the defect may usually be remedied

by a remittitur of the excess, if it can be readily calculated with reasonable certainty, whether the action is one of tort or on contract, and although such act of the successful litigant obviates an otherwise prejudicial error. See 66 C.J.S. *New Trial* § 76 d. (1950).

The defendant argues that Neb. Rev. Stat. § 25-1142(5) (Reissue 1979) requires the granting of a new trial in a contract action wherever the assessment of the amount of recovery is too large. It seems obvious, however, that when the amount of excess can be reasonably ascertained and a remittitur granted, the amount of the recovery no longer is too large. Where the trial court has ordered a reduction of the verdict as a condition of denying a new trial, such order will not ordinarily be reversed unless an abuse of discretion is shown. *McCann v. Omaha & C. B. Street R. Co.,* 117 Neb. 786, 222 N.W. 633 (1929). In the case at bar the record establishes the amount of the excess with reasonable certainty. There is no complaint as to the instructions, and the granting of the remittitur avoids the expense and delay of the further trial of the same facts. There was no abuse of discretion on the part of the trial court.

The defendant also complains as to the award of attorney fees. The record shows that plaintiff's claim was made under the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. §§ 48-1228 to 48-1232 (Reissue 1978). Section 48-1231 provides that the award of an attorney fee of not less than 25 percent of the unpaid wages is mandatory. The record includes the actual contract for attorney services and there is no evidence that the amount fixed by the court was unreasonable. The court considered the relevant factors required to be considered in determining the value of legal services and there was no abuse of discretion. See *Schmer v. Hawkeye-Security Ins. Co.,* 194 Neb. 94, 230 N.W.2d 216 (1975).

The judgment of the District Court was correct and is affirmed.

AFFIRMED.

BOSLAUGH and HASTINGS, JJ., concur in the result.

CAPORALE, J., disqualified.