CHRISTIAN E. KUEHL, JR., APPELLEE, V. DIESEL POWER
EQUIPMENT COMPANY, INC., A NEBRASKA CORPORATION,
APPELLANT.
422 N.W.2d 361

Filed April 29, 1988.    No. 86-559.

Richard J. Bruckner, for appellant.

Richard J. Rensch of Schumacher & Gilroy, for appellee.

HASTINGS, C.J., CAPORALE, GRANT, and FAHRNBRUCH, JJ.,
and CHEUVRONT, D.J.

CAPORALE, J.

Appellee, Christian E. Kuehl, Jr., filed suit in what was then the municipal court of the city of Omaha, seeking $4,737.97 in wages and commissions allegedly due him from appellant, Diesel Power Equipment Company, Inc., under an oral employment contract, and an attorney fee. Diesel Power answered Kuehl's petition and counterclaimed for $7,702.95 in alleged costs and expenses incurred in covering Kuehl's territory for a period during which Kuehl allegedly could not be found. Following a bench trial, the municipal court dismissed both Kuehl's petition and Diesel Power's counterclaim. Both parties appealed to the district court, which entered a $2,483.11 judgment in favor of Kuehl and dismissed Diesel Power's counterclaim. Diesel Power has appealed to this court and assigns four errors, the first three of which repeat in various ways the single assertion that the district court applied the wrong standard of review or misapplied the correct standard in

reversing the municipal court's dismissal of Kuehl's claim. In its fourth assignment of error Diesel Power asserts that the dismissal of its counterclaim is not supported by the evidence. We affirm as modified.

Kuehl entered the employ of Diesel Power at Valley, Nebraska, in July of 1983 at a starting salary of $830 per month, less a $30-per-month deduction for the use of a company automobile. In addition to this salary Kuehl was to be paid commissions of 15 percent of the gross profit on sales and 2 percent on rentals.

By the next February Kuehl became suspicious that Diesel Power was overestimating the cost of its merchandise, thereby reducing the stated gross profit margin on sales and artificially reducing the commissions due its sales personnel. Kuehl testified that he brought his concerns to the attention of the officers and managers of Diesel Power and to his immediate supervisor, Darrell Smith, during a meeting between the two men on July 28, 1984. However, Walter Price, owner and manager of Diesel Power, testified that Kuehl had never complained about the commission plan to him, nor had he heard of complaints to other company officials.

In March or April of 1984, Kuehl was given a raise of $400 per month, bringing his monthly salary to $1,230, minus the $30 automobile use deduction, for a total of $1,200 per month. According to Price, this 50 percent salary increase was given to provide Kuehl "some incentive." Sometime later, Diesel Power reduced Kuehl's salary to its former level, $830 per month minus the $30 automobile deduction. Kuehl first became aware of this salary reduction on August 8, 1984, when, in Kuehl's words, Smith informed him that "Walt had kept my salary back." Smith, who at the time of giving his deposition testimony was no longer employed by Diesel Power, stated there had been no prior discussion with him concerning Kuehl's salary.

Frustrated at Diesel Power's lack of responsiveness to his requests for information regarding the commission plan, Kuehl decided to withhold his customer contact reports from the company, turning in his last set of reports on June 9. According to Kuehl, he withheld these reports in an attempt to force the

company to provide him with certain information pertinent to his commissions.

Kuehl maintains that he was available by phone and mail throughout June and July of 1984 and that he was working during that entire period writing orders and performing other job functions for Diesel Power. Smith also testified that Kuehl was available by phone and working throughout this period. Price, Oren Engler, the office manager for Diesel Power, and William Barnard, Diesel Power's sales coordinator, testified, however, that Kuehl could not be reached during June and July of 1984. Kuehl testified that he attended horseraces in Omaha, Nebraska, "a couple times a week, two maybe three times a week, Saturdays included," during June and July, on some of which occasions he entertained Diesel Power customers. The races started at 4 p.m., by which time Kuehl could have worked an 8- or 9-hour day. According to Kuehl, prior to July 1984, he had taken days off from work from October 3 through 9, 1983, due to back problems and some time in March of 1984 with stomach problems. Kuehl said he informed Diesel Power personnel of these days off; Price, on the other hand, said Kuehl did not inform anyone at the company of these days off.

Price testified that because Diesel Power officials could not contact Kuehl in June and July, he had Smith, then Diesel Power's sales supervisor, cover Kuehl's territory. Smith testified that he visited Kuehl's territory during that period as part of his normal supervisory duties and that he traveled and worked with Kuehl on June 26 and 28 and July 24 and 27, 1984, in his supervisory capacity.

According to Kuehl, he "was informed by Darrell Smith on the 8th of August, that I was terminated. Well, he said Walt Price asked him to fire me that day." Price testified that he wrote a memorandum dated August 16, 1984, directing his employee Engler "to handle the final exit interview with" Kuehl. To Price's knowledge, this interview was conducted on August 21, 1984, the day on which Kuehl returned the company automobile and literature to Diesel Power. During that meeting, Engler discussed with Kuehl, among other things, the "vested interest in certain commissions." The record contains uncanceled checks drawn by Diesel Power on its account at the

First National Bank of Omaha payable to Kuehl, totaling $935.49 for salary and commissions, all except one of which bear a legend denominated "RELEASE STATEMENT" for commissions or salary "paid in full" through a stated month.

Kuehl testified he negotiated none of these checks for fear that by doing so he would have waived his claims to the commission and salary amounts in dispute. The record also contains a letter from Diesel Power to Kuehl stating there was an additional $1,452.62 "of commission items which will be released for payment," exclusive of a check in the gross amount of $95 which is reflected as a $66.21 net check in the $935.49 mentioned earlier. The letter also reflects that $393.74 of the total amount was an estimated figure and "subject to change," but no evidence was adduced which establishes a basis for reducing that figure.

The issue presented by Diesel Power's first three assignments of error is controlled by Neb. Rev. Stat. § 24-541.06(1) (Reissue 1985), which provides, as it has at all times relevant to this appeal, that "[i]n all cases other than appeals from the Small Claims Court, the district court shall review the case for error appearing on the record made in the county court or on the record made, if prior to July 1, 1985, in the municipal court. . . ." Such is also the scope of review in this court. Neb. Rev. Stat. § 25-1911 (Reissue 1985). See, also, *In re Estate of Casselman*, 219 Neb. 653, 365 N.W.2d 805 (1985). The determination as to whether the district court correctly applied the aforementioned scope of review to this suit for breach of contract, an action at law, *Kubista v. Jordan, ante* p. 244, 422 N.W.2d 78 (1988), in which a jury was waived, is controlled by the principle that reviewing courts presume the controverted facts were decided by the trier of fact in favor of the successful party. Accordingly, those findings will not be disturbed on appeal unless clearly wrong, it not being the province of the reviewing courts to resolve conflicts in or reweigh the evidence. See, *Curlile v. Lindner*, 227 Neb. 510, 418 N.W.2d 256 (1988); *Professional Recruiters v. Wilkinson Mfg. Co.*, 222 Neb. 351, 383 N.W.2d 770 (1986).

Regardless of how one resolves the various conflicts in the evidence concerning whether Kuehl worked during the entire

months of June and July, Diesel Power's own evidence establishes that it conceded it was indebted to Kuehl in the amount of $2,388.11, $935.49 of which is represented by unnegotiated checks and $1,452.62 of which is accounted for by additional commissions Diesel Power admits Kuehl earned. Thus, the municipal court's judgment that Kuehl was entitled to nothing on his petition is clearly wrong, and the district court was correct in reversing it. We cannot, however, agree with the district court's computation of the amount owed Kuehl. The evidence detailed previously establishes that the district court's assessment of Kuehl's damages in the amount of $2,483.11 is excessive by $95, and its judgment must therefore be so modified.

In view of the fact Kuehl has not cross-appealed, we do not consider whether the district court erred in not assessing an attorney fee against Diesel Power under the provisions of Neb. Rev. Stat. § 48-1231 (Reissue 1984). See *State v. Thompson*, 224 Neb. 922, 402 N.W.2d 271 (1987). That statute requires that where an employee successfully maintains a suit through an attorney for wages not paid within 30 days of the regular payday, an attorney fee equal to at least 25 percent of the unpaid wage shall be awarded. *Barbour v. Jenson Commercial Distributing Co.*, 212 Neb. 512, 323 N.W.2d 824 (1982).

We thus move on to consider the issue presented by the fourth and last assignment of error, whether the district court erred in failing to reverse the municipal court's dismissal of Diesel Power's counterclaim. There was substantial conflict as to whether Kuehl abandoned his employment responsibilities during the entire months of June and July, as well as to what costs, if any, Diesel Power incurred as a result of any such abandonment. Accordingly, it cannot be said the municipal court was clearly wrong in dismissing Diesel Power's counterclaim, and, therefore, the district court was correct in not disturbing that aspect of the municipal court's judgment.

Accordingly, the judgment of the district court is affirmed as modified in this opinion.

Under the provisions of § 48-1231, we additionally award Kuehl the sum of $773.97, one-third of the modified judgment of $2,388.11 less the $66.21 check which was tendered to Kuehl

without the "RELEASE STATEMENT" described earlier, to apply toward the services of his attorney in this court.

AFFIRMED AS MODIFIED.